Harry V. Butler, Appellant, *v.* Bertha M. Butler, Respondent.

First Department, March 2, 1923.

**Husband and wife — action to annul marriage on ground of fraud — issues sent to Trial Term without framing — trial justice had no power to dismiss complaint — irregularity disregarded where judgment dismissing complaint was entered on decision of Special Term — fraud charged was misrepresentation as to chastity — action for annulment cannot be maintained where subsequent to discovery of fraud parties made and performed separation agreement.**

In an action to annul a marriage, the justice at Trial Term to which the issues raised by the pleadings were sent without framing, has no power to dismiss the complaint, but inasmuch as the justice at Special Term, after the action of the Trial Term, made certain findings of fact and conclusions of law to the effect that the defendant was entitled to a judgment dismissing the complaint, and the judgment was entered on the decision by the Special Term, the irregularity on the part of the Trial Term justice will be disregarded.

An action by a husband to annul the marriage on the ground of fraud consisting of misrepresentations made by the wife prior to marriage as to her chastity,

---

* See Laws of 1921, chap. 10, and Laws of 1922, chap. 18, amdg. said § 200.— [Rep.

cannot be maintained, where after the discovery by the husband of the alleged fraud the parties entered into a separation agreement which was performed for nearly a year and until the commencement of the action.

CLARKE, P. J., and FINCH, J., dissent, with opinion.

APPEAL by the plaintiff, Harry V. Butler, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 6th day of March, 1922, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint on the merits.

*Abraham Greenberg* [*Edward H. Davis* of counsel], for the appellant.

*Holley & Oxenberg* [*Myle J. Holley* of counsel], for the respondent.

PAGE, J.:

The action was brought by the husband for the annulment of the marriage theretofore solemnized between himself and the defendant on the ground of false representations. The facts as developed on the trial are as follows: Plaintiff's first wife died March 1, 1919. A few days thereafter he became a patient of Dr. Hoyt, being treated for a narcotic habit. About the middle or latter part of April he became an inmate of the doctor's house. The defendant was a trained nurse, employed by the doctor as such, and also as his housekeeper, and lived in the house with him. In May the plaintiff became engaged to the defendant and they were married on June 11, 1919. The plaintiff testified that shortly before they were engaged, the defendant stated to him that " it was very tedious to her to work in there, and she also dwelt very strongly on the fact of living alone in this house with the doctor, that it looked very bad to the neighbors and to her friends. She says ' Particularly because it reflects upon my character as a woman,' and she says, ' God knows that I am as pure as the day I was born, and this looks very bad, living alone here with the doctor.' " After they returned from their wedding journey, at the defendant's request, they drove directly from the railroad station to the doctor's house, and plaintiff witnessed demonstrations of affection between the doctor and defendant. When they reached their own residence, he remonstrated with the defendant and a quarrel ensued, during which the defendant informed the plaintiff that the doctor's wife had obtained a divorce from him and that she was the corespondent in the action. This occurred between August fifteenth and twentieth, and the first or second morning thereafter the plaintiff returned the defendant to the doctor's house and has not cohabited with her since. On August 29, 1919, the parties entered into an agreement wherein it was recited that the parties thereto are husband and wife, and unhappy differences have arisen and exist between the parties, and that the parties

are living separate and apart from each other and have agreed to live separate and apart from each other during their natural lives, unless terminated by mutual consent, and that the parties are desirous of making provision for alimony to be paid by the party of the first part (the plaintiff) to the party of the second part (the defendant) for the separate support and maintenance of the party of the second part. The parties thereto agreed for and during their natural lives, unless the agreement was terminated by mutual consent, to live separate and apart from each other, and each of the parties covenanted that he or she would not interfere with the rights, privileges or doings of the other. The party of the first part agreed to pay and the party of the second part agreed to accept for the support and maintenance of the party of the second part a sum therein specified each and every month of the duration of the agreement; and the party of the second part agreed that during such period and so long as the party of the first part will pay the sums therein provided, she will not contract any debts, charges or liabilities whatsoever, for which the party of the first part or his property or estate shall or may become liable, responsible or answerable. Each of the parties agreed that he or she will in no way molest or disturb the other party to the agreement, or demand the right to live with the other party to the agreement, or assert any rights against the other party to the agreement by reason of the fact that the parties thereto were husband and wife.

Nearly a year after the agreement was entered into, on July 14, 1920, the plaintiff commenced this action. In the meantime and up to the time of the commencement of this action the plaintiff paid to the defendant the sums on his part agreed to be paid in the said agreement.

The issues raised by the pleadings were sent to the Trial Term for trial without the framing of the issues. At the end of the plaintiff's case the defendant's attorney moved for a dismissal of the complaint, and the trial justice granted the motion. The case was remitted to the Special Term, where the defendant proved the marriage and that there was no divorce; whereupon the learned justice made certain findings of fact and a conclusion of law " that the defendant is entitled to a judgment dismissing the complaint of the plaintiff herein upon the ground that the plaintiff is estopped and barred from asserting his right to an annulment, having entered into a separation agreement with the defendant subsequent to the time of the discovery of the facts alleged as ground for the annulment of his marriage to the defendant."

The practice was irregular. The action was in equity, and the issues of fact were ordered to be tried at Trial Term. The justice

there presiding could only try those issues; he could direct a verdict, but he could not dismiss the complaint. At Special Term the stenographer's minutes of the proceedings at the Trial Term were offered in evidence, and upon the facts thereby proved the Special Term justice rendered his decision. This was not an action where the parties had a constitutional right to a trial by jury. A verdict would have been advisory merely and not conclusive. The justice at Special Term had the right to determine the issues, and as he found as a matter of law that the separation agreement was an estoppel and bar to the maintenance of the action, and the judgment was entered on his decision, the irregularity in the proceedings may be disregarded.

This court, nearly twenty-seven years ago, laid down the salutary rules which should govern actions of this character, saying: " The right to bring such an action is now established by section 1743 of the Code of Civil Procedure [Dom. Rel. Law, § 7, subd. 4],* but the jurisdiction of the court to annul a marriage upon the ground of fraud is not acquired by the provisions of any statute. It arises from the inherent jurisdiction of a court of chancery to set aside any contract when one of the parties was induced to enter into it by fraud upon him. (*Ferlat* v. *Gojon,* Hopkins' Ch. 478.) But while the jurisdiction to annul a marriage is based upon the ordinary equity jurisdiction of the court, the fraud which will induce the court to set aside a contract of marriage is something different from the fraud which will induce the court to set aside an ordinary contract which has been executed, or even a contract which is still executory. The contract of marriage is something more than a mere civil agreement between the parties, the existence of which affects only themselves. It is the basis of the family, and its dissolution, as well as its formation, is matter of public policy in which the body of the community is deeply interested, and it is to be governed by other considerations than those which obtain with regard to any ordinary civil contract *inter partes.* For that reason the courts have been strict in laying down and in maintaining rules as to the annulment of this contract, and in requiring a somewhat higher degree of proof before permitting it to be set aside for fraud, than is requisite for the annulment of ordinary contracts, and in insisting also that the fraud which shall invalidate the contract must be something more than a mere misrepresentation as to collateral matters. Without examining fully into all the cases upon this subject, it may be sufficient to say that the rule is well settled that no fraud will avoid a marriage which does not go

---

* See Code Civ. Proc. §§ 1743, 1750; now. Civ. Prac. Act. §§ 1132, 1139; Dom. Rel. Law, § 7, subd. 4.— [Rep.

to the very essence of the contract, and which is not in its nature such a thing as either would prevent the party from entering into the marriage relation, or, having entered into it, would preclude performance of the duties which the law and custom impose upon the husband or wife as a party to that contract. * * * If, when the relation is entered into, the party is competent to make that contract, is mentally competent to do the duties which the contract involves, and physically able to meet its obligations, nothing more can be required; and however the other party may be disappointed as to physical or mental characteristics which he or she expected would exist, such disappointment is no ground for setting aside the contract, which the public good requires should be rendered indissoluble except for the gravest reasons. In the application of this rule the courts have properly proceeded to an extent which seems sometimes to work a hardship. Undoubtedly it is gravely important to every respectable man that the woman whom he takes to wife should be virtuous; and yet it is thoroughly well settled that the mere fact that the woman, previous to her marriage, has, without the knowledge of her husband, been guilty of incontinence, affords no ground for setting aside the marriage contract, if she has reformed." (*Fisk* v. *Fisk*, 6 App. Div. 432–435. See, also, *Glean* v. *Glean*, 70 id. 576.)

Although it might appear that the opening sentence of the above quotation was in conflict with the statement of VANN, J., in *Stokes* v. *Stokes* (198 N. Y. 301, 304) that "an action to annul a marriage is purely statutory," the latter statement means that the Legislature, declaring the public policy of the State, having specified certain cause for annulment and defined how the actions could be brought and the parties who could bring them, the court by reason of its inherent equity jurisdiction, cannot add to either the subject-matter or the parties. (*Walter* v. *Walter*, 217 N. Y. 439, 441.)

But where, as in the case under consideration, the subject-matter and the parties are within the limits of the statute and the subject-matter is one of former equitable cognizance, the principles governing the right to relief in chancery are to be applied and are determinative of the relief. For the purposes of this appeal, I will assume that the representation of chastity made by the wife before marriage was a material misrepresentation which would entitle the husband to maintain an action for annulment on the ground of fraud, although it is not authoritatively settled in this State, and there are authorities to the contrary in other States. These authorities are collated in *Domschke* v. *Domschke* (138 App. Div. 454), which was decided by a division of three to two.

Nevertheless I am of opinion the plaintiff could not maintain this action. If this was an action in equity for the rescission of an executed contract on the ground of false and fraudulent misrepresentation, the plaintiff would be required to act promptly, " upon the discovery of the fraud announce his purpose and adhere to it." (*Shappirio* v. *Goldberg*, 192 U. S. 232, 242; *Grymes* v. *Sanders*, 93 id. 55, 62; *Clark* v. *Kirby*, 204 App. Div. 447.) The case of *McNaught* v. *Equitable Life Assurance Society* (136 App. Div. 774) is quite illuminating of the principles to be applied in the instant case. The plaintiffs, McNaught and his wife, commenced an action by the service of a summons without a complaint in equity for a rescission of a policy of insurance, on the ground that they were induced to enter into the contract by certain false and fraudulent representations made by defendant knowingly and with intent to deceive the plaintiffs, and relied upon by the plaintiffs in their acceptance of the policy. The complaint when served set forth all the facts necessary to constitute the cause of action, and in addition thereto alleged that on a date subsequent to the commencement of the action they paid a premium on the policy and notified the defendant that the payment was made without prejudice to the rights of the plaintiffs in the premises, and reserving all the legal and equitable rights of the plaintiffs to rescind and cancel the policy and prosecute this suit. The court reversed the Special Term and sustained the demurrer to the complaint, holding that this subsequent payment of the premium was an affirmance of the contract with full knowledge of the fraud and defeated the plaintiffs' right to rescind. The same argument was made in that case as is made in this, that the contract was not void but voidable, and the contract was denied to be in full force until the entry of the judgment granting the rescission, and that, if this be so, the plaintiffs having elected to rescind, were yet obliged to keep on paying premiums during the pendency of the action, in order to avoid the forfeiture clause of the policy. The court said (p. 777): " After a rescission, no obligation under the contract survived against the plaintiffs. It is said by some text writers that in an equitable action for rescission the ' judicial rescission when obtained relates back to the date of the commencement of such proceedings.' (Wald's Pollock Cont. [3d ed.] 710). This does not mean that until the judgment is obtained the contract is to be deemed as still in force, but means, on the contrary, that if a judgment of rescission be obtained, it takes effect as of the time of the bringing of the action, and the plaintiff is not considered as bound under the contract in the meantime."

In an action to annul a marriage a decree of nullity relates back

to the date of the marriage. While it may be there is a duty to. support the wife until the decree is granted that she may not become a public charge (*People ex rel. Heinle* v. *Heinle*, 115 Misc. Rep. 469, 470), yet if she has means of her own, no allowance for counsel fee or alimony pending the action will be made. (*Brand* v. *Brand*, 178 App. Div. 822.) But, however that may be, on the discovery of the fraud, the plaintiff was required to immediately leave the defendant, and live separate and apart from her. His action for an annulment should have been promptly brought. Instead of doing this, the plaintiff entered into an agreement recognizing the defendant as his wife and agreeing to contribute to her support through life, if the agreement should not be sooner terminated by consent. She relinquished certain rights, by reason of this agreement, and he recognized his obligation as a husband to contribute a certain sum to her support as his wife. And for nearly a year this contract was performed. In my opinion, with full knowledge of the facts which would have entitled him to an annulment of the contract, he recognized its binding force and affirmed it and thereby lost his right to thereafter disaffirm. To hold otherwise would, as it seems to me, ignore the principles that obtain in the usual equity action for a rescission on the grounds of false and fraudulent representations, and allow, where a matrimonial contract is involved, a more liberal and relaxed policy, whereas the courts have held stricter rules are applicable to such contracts than to the ordinary business contracts.

The judgment should be affirmed, with costs.

Dowling and Merrell, JJ., concur; Clarke, P. J., and Finch, J., dissent.

Clarke, P. J. (dissenting):

Passing all questions of practice, it clearly appears from the evidence that there was sufficient ground to warrant the court to enter a judgment annulling the marriage for the fraud of defendant in inducing the same, unless the separation agreement entered into after discovery of the fraud bars the action. I do not think it does. The marriage was not void, but voidable only, and was good until annulment by the court. By the separation agreement plaintiff provided for the performance of his marital obligations of support and maintenance. To hold this to be an affirmance of the validity of the marriage and a bar to the action for annulment, said marriage having been induced by gross fraud and deception consisting of affirmative and knowingly false statements in regard to a most material fact, namely, the pre-marriage chastity of the wife, when it appears, without dispute, that prior to this

marriage, in a divorce action in which she appeared as corespondent, she was found to have been guilty of adultery and that the present plaintiff immediately ceased to live with her after discovery of that fact, seems to me to present a shocking situation. I cannot agree that the law affords no remedy. As an action for divorce could not lie for acts committed before marriage, it must be that annulment will.

In my opinion the judgment appealed from should be reversed and a new trial ordered.

FINCH, J., concurs.

Judgment affirmed, with costs.