CHARLES CAMPBELL, Appellant, v. MARY L. CAMPBELL, Respondent.

First Department, January 19, 1934.

*Michael Popper*, for the appellant.

*Frank W. Chambers* of counsel [*James L. Clare* with him on the brief; *Smith, Chambers & Clare*, attorneys], for the respondent.

PER CURIAM. We concur with Mr. Justice UNTERMYER in so far as the third and fourth affirmative defenses are held insufficient. However, we are of the opinion that in an action for an annulment of marriage on the ground of fraud, a defense of laches may not be interposed. It is to be noted that section 1139 of the Civil Practice Act provides: " An action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by force, duress or fraud may be maintained at any time by the party whose consent was so obtained."

The same section makes specific provision as follows: " Such an action may also be maintained during the life-time of the other party by the parent or the guardian of the person of the *party* whose consent was so obtained, or by any relative of that *party* who has an interest to avoid the marriage."

In other words, the section gives a cause of action to the parent, guardian or relative, which may be brought *after the death* of the party defrauded and during the life-time of " the other party."

In our opinion the provisions of this section make it quite evident that it was the intention of the Legislature, when this statute was enacted and incorporated in its present form in the Code of Civil Procedure, to eliminate all affirmative defenses based upon a limitation of time in an annulment action which is predicated upon the ground of fraud, with the exception of the one specifically enumerated therein, namely, that " the parties voluntarily cohabited as husband and wife, with a full knowledge of the facts constituting the fraud." The section was included in the Civil Practice Act without any amendment or modification (§ 1139). It was the apparent purpose of the Legislature not only to protect the defrauded party by giving a right to annul, but also to protect any property rights of his or her relatives which may have been affected. If this were not so, it is difficult to comprehend why a relative of a defrauded party after his or her death, and " during the life-time of the other party," is permitted to bring an action for an annulment, if the relative merely " has an interest to avoid the marriage."

It is contended that the plaintiff may be deprived of his right to annul his marriage because of laches. In view of the fact that a relative after his death, should defendant survive him, may bring the same action upon proof of an " interest to avoid the marriage " that argument would seem to be untenable. It cannot be gainsaid that the laches of this plaintiff would not be attributable to his relatives, and, consequently, would not constitute a defense to the action.

The construction which we deem must be placed upon the statute is that it precludes all affirmative defenses based upon a period of

time, regardless of how they may be denominated, and limits the defendant to a general denial of the alleged fraud, and to the one affirmative defense stated in the section, namely, that " the parties voluntarily cohabited as husband and wife, with a full knowledge of the facts constituting the fraud."

We, therefore, vote to reverse the order and grant the motion to strike out the second, third and fourth defenses.

MARTIN, O'MALLEY and GLENNON, JJ., concur; FINCH, P. J., and UNTERMYER, J., dissent and vote for modification by striking out the third and fourth defenses.

UNTERMYER, J. (dissenting). The action is for the annulment of the plaintiff's marriage to the defendant contracted in 1919, upon the ground that the defendant had represented herself to be chaste, whereas, unkown to the plaintiff, she was at that time the mother of an illegitimate child. The amended answer, in addition to denials, sets forth four affirmative defenses, of which the plaintiff moved to strike out the second, third and fourth as insufficient in law. The motion was denied.

The second defense alleges that at some time in 1922 the plaintiff acquired full knowledge of the true facts concerning which the alleged misrepresentations were made; that notwithstanding such knowledge he continued to " reside " with the defendant until January, 1932, and further delayed the institution of this action until July, 1932, or for a period of " about ten years " after discovery of the facts constituting the alleged fraud. It is accordingly alleged by the second defense that the plaintiff has been guilty of laches. The third and fourth defenses set up the ten-year and the six-year limitation within which, respectively, an action in equity (Civ. Prac. Act, § 53) and an action for fraud (Civ. Prac. Act, § 48) must be commenced.

We are of opinion that the third and fourth defenses, but not the second, should have been stricken out. Section 1139 of the Civil Practice Act provides: " An action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by force, duress or fraud may be maintained *at any time* by the party whose consent was so obtained. Such an action may also be maintained during the life-time of the other party by the parent or the guardian of the person of the party whose consent was so obtained, or by any relative of that party who has an interest to avoid the marriage. But a marriage shall not be annulled on the ground of force or duress if it appears that, at any time before the commencement of the action, the parties thereto voluntarily cohabited as husband and wife; or on the ground of fraud, if it

appears that, at any time before the commencement thereof, the parties voluntarily cohabited as husband and wife, with a full knowledge of the facts constituting the fraud."

By the words " at any time " the Legislature must, we think, have intended to exclude actions to annul a marriage from the statutory limitations applicable to other actions based upon fraud, whether at law or in equity, contained in sections 48 and 56 of the Civil Practice Act. (*Jacobson* v. *Jacobson*, 207 App. Div. 238.) This view is confirmed by the history of section 1139, and in particular by the circumstances under which the words " at any time " were inserted therein. Section 1139 is derived from section 30 of chapter VIII of the Revised Statutes, title 1, part II, which, as it stood in 1846, provided: "A marriage may be annulled, on the ground that the consent of one of the parties was obtained by force or fraud, during the life time of the parties, or one of them, on the application of the party whose consent was so obtained, or of the parent or guardian of such party, or of some relative interested to contest the validity of the marriage."

Under this statute it was held, in 1848, in *Montgomery* v. *Montgomery* (3 Barb. Ch. 132), that such an action could not be maintained after six years from the discovery of the fraud and that the meaning of this provision was " that the suit can only be brought by the party whose consent has been obtained by force or fraud, or by some person who has an interest in contesting the validity of the marriage, during the lifetime of the parties to the marriage, or during the life of one of those parties, and not afterwards; not that the suit may be brought at any distance of time after the right to institute it occurred, provided either party is still living." Substantially in this form the section stood until 1880, notwithstanding other amendments and revisions (Laws of 1862, chap. 246; R. S. part II, chap. 8, tit. 1, art. 2), but in that year it was amended by inserting the words " at any time," thus leaving these provisions (Code Civ. Proc. § 1750) in the same form in which section 1139 of the Civil Practice Act appears today. In the light of the previous judicial construction of this section by the decision in *Montgomery* v. *Montgomery* (*supra*), of which the Legislature is presumed to have been cognizant (*Kent* v. *Jamestown Street R. Co.*, 205 N. Y. 361; *Cashmore* v. *Peerless Motor Car Co.*, 154 App. Div. 814), the conclusion is irresistible that the insertion of the words " at any time " was intended to introduce a change in the meaning of the section (*James* v. *Patten*, 6 N. Y. 9; *Clason* v. *Baldwin*, 129 id. 183; *Rosenblum* v. *Gorman*, 21 App. Div. 618; *Pulitzer* v. *City of New York*, 48 id. 6) by excluding actions of this character from the statutory limitations of time applicable to other actions for fraud.

What has been written, however, does not apply to the defense of laches, for laches is not, like limitation, a mere matter of time. Notwithstanding the doubt at one time expressed (*Cox* v. *Stokes*, 156 N. Y. 491; *Treadwell* v. *Clark*, 190 id. 51), it is now established that laches exists as a defense in equity, " to be considered wholly independent of the Statute of Limitations." (*Groesbeck* v. *Morgan*, 206 N. Y. 385.) In this respect laches is comparable to estoppel, waiver or acquiescence. (*Lindsay Petroleum Co.* v. *Hurd*, [L. R.] 5 P. C. 221.) In *Chase* v. *Chase* (20 R. I. 202) the equitable doctrine of laches as distinguished from limitations was stated in an opinion often cited on this point. " Laches," said the court, " in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." Pomeroy, likewise, says " It [laches] is in no way dependent on those general considerations of public utility, and the ' repose of society,' which are, in legal theory, the legislative motives for statutes of limitations." (4 Pom. Eq. Juris. [2d ed.] § 1442.)

The defense of laches, it is true, is limited to actions wherein the plaintiff asserts an equitable right. (*Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113.) But in *Butler* v. *Butler* (204 App. Div. 602) it was held that although an action for the annulment of a marriage is now regulated by statute (*Walter* v. *Walter*, 217 N. Y. 439) it is inherently equitable in origin and character and that " the principles governing the right to relief in chancery are to be applied and are determinative of the relief " (*Butler* v. *Butler*, *supra*, 606). To the same general effect are *Higgins* v. *Sharp* (164 N. Y. 4, 9); *Brinkley* v. *Brinkley* (50 id. 184, 200); *Berry* v. *Berry* (130 App. Div. 53, 59). The provisions of section 1139, that a marriage shall not be annulled if the parties have cohabited with knowledge of the fraud, contain no suggestion that that defense is exclusive of all others or that a defendant in an action to annul a marriage may not assert the same equitable defenses available in actions to rescind other contracts on the ground of fraud. Here, it must be remembered, the marriage of the parties was not void but voidable. (Dom. Rel. Law, § 7,

subd. 4.) Being voidable, the plaintiff might, notwithstanding the fraud, affirmatively ratify the marriage, or acquiesce therein, or he might by inexcusable delay estop himself from asserting its invalidity. (Cf. *Chittenden* v. *Chittenden*, 64 Misc. 649; affd., 137 App. Div. 932.) We do not think it is important that such an action may be maintained by a parent or guardian of the party whose consent was fraudulently obtained or by a relative who has an interest to avoid the marriage, for (except to the extent already indicated) the statute in no way limits the defenses that may be interposed when the action is instituted by one of these. Since it contains no such limitation, it follows that whatever defenses are available against the party who has been defrauded are likewise available against any one of those enumerated in the statute who undertakes to enforce these derivative rights.

All the elements constituting laches are stated in the second defense. The plaintiff, it is alleged, for ten years had knowledge of the misrepresentations of which he now complains. Yet, knowing this, he not only failed to take action to secure the annulment of the marriage but recognized its validity by continuing to reside with the defendant and by receiving at least certain of its benefits during this long period of time. If these are the facts, the trial court may find that the defendant's circumstances and prospects have so changed that it would be inequitable to afford relief.

The order appealed from should, therefore, be modified in so far as to grant the motion to strike out the third and fourth defenses, and as so modified affirmed.

FINCH, P. J., concurs.

Order reversed and motion granted.