LINDLOTS REALTY CORPORATION, Respondent, *v.* COUNTY OF SUFFOLK, Appellant.

Second Department, June 11, 1937.

*Harold R. Medina* [*Vahan H. Kalenderian* and *John W. Jordan* with him on the brief], for the appellant.

*Clarence J. Shearn* [*Martin Lippman* with him on the brief], for the respondent.

CLOSE, J. Between 1915 and 1922 the defendant, County of Suffolk, sold about 5,000 lots in the town of Babylon for unpaid taxes. The lots belonged originally to about 1,500 separate owners. All the parcels were purchased by the county. In July and August, 1926, one George Sylvester purchased the lots from the defendant for $76,153.23, receiving six bargain and sale deeds executed by the county treasurer. Sylvester was an attorney, and in purchasing the property he acted for one Joseph Snyder, who paid the purchase price. Snyder had employed Sylvester to organize the plaintiff corporation, and the incorporation was completed a few days after the conveyances of the property to Sylvester. Snyder has at all times been the sole stockholder of the plaintiff. The trial court found, upon adequate evidence, that Sylvester had no personal interest in the purchases and that he took title as a dummy for the plaintiff corporation.

On June 27, 1928, Sylvester and his wife executed three deeds to the plaintiff corporation, conveying the lots acquired from the defendant. These deeds were not recorded. On June 28, 1932, Sylvester and his wife executed and delivered three duplicate deeds, which were recorded on various dates in July and August, 1932.

Each of the six deeds from the defendant to Sylvester contained a recital in substantially the following form:

" Whereas the lands and premises herein below described were duly sold for unpaid taxes charged thereon by the County Treasurer of the County of Suffolk, New York, in the month of March, 1915, after due notice in accordance with law, and upon such sale the said lands and premises were struck off to the County of Suffolk, and

" Whereas the time for the redemption of the same from said sale has expired and said lands and premises have not been redeemed

and the same have been conveyed to the County of Suffolk by the County Treasurer thereof, in the manner prescribed by law," etc.

The defendant now concedes that the tax sales were invalid because of insufficient advertising. At some time early in 1933, the defendant instituted a proceeding to condemn property for the Sunrise Highway Extension, including various parcels described in the plaintiff's deeds. In this proceeding the defendant objected to any award to the present plaintiff on the ground that it had no valid title. The condemnation commissioners thereupon made an award to unknown owners, but later made an award to the plaintiff. This the plaintiff declined to accept because by that time it had elected to rescind the whole transaction.

The plaintiff says, and the record contains nothing to the contrary, that the first knowledge it had of any defect in its title came when it received a copy of the defendant's answer in a proceeding to register the title to a portion of the lots. This was on February 7, 1933. Promptly thereafter it demanded a rescission of the sales to its agent, Sylvester, and a return by the defendant of the purchase money, together with $12,898.96, subsequent taxes paid, and offered to deliver a quitclaim deed to the defendant.

On the present appeal the defendant contends that the judgment should be reversed for any one of three reasons: (1) Because the action is barred by the five-year Statute of Limitations; (2) because only the immediate purchaser from the defendant could maintain an action for rescission; and (3) because the rule of *caveat emptor* applies.

There seems to be no serious dispute about the plaintiff's right to a judgment of rescission if these three defenses are ineffective. A representation was made by the defendant which was concededly false. It was obviously material. Even though the representation was innocently made, an action will lie in equity to rescind the transaction. (*Bloomquist* v. *Farson*, 222 N. Y. 375.) This discussion can, therefore, be confined to the three defensive theories advanced by the appellant.

(1) *The Statute of Limitations.* The plaintiff contends that we should decline to consider the question whether the five-year Statute of Limitations provided for in section 132 of the Tax Law is a bar to the action, because the defense was not pleaded in the answer or raised at the trial. The rule is familiar that a Statute of Limitations is not available as a bar unless it is pleaded. In *Nehasane Park Assn.* v. *Lloyd* (167 N. Y. 431) the Court of Appeals refused to consider a defense of the Statute of Limitations based on chapter 448 of the Laws of 1885, from which section 132 of the present Tax Law was derived. There the court said (p. 438):

" This statute operates only as a bar to the remedy, and inasmuch as the defendant has not pleaded it in his answer it is not available as a defense. [Citing cases.] We assume that it is elementary law that a party to an action who would take advantage of a Statute of Limitations must plead it as a defense."

The five-year Statute of Limitations was not pleaded in the answer. The defendant says, however, that its plea of the six-year statute was sufficient, because if six years had elapsed since the accrual of the cause of action, certainly five years must have elapsed. In support of this argument the defendant cites *Camp* v. *Smith* (136 N. Y. 187), where the court said (p. 203): " It is, however, claimed on the part of the plaintiff that the answer of the Statute of Limitations in this case is not sufficient because it alleges eight years instead of six as the time which had elapsed. The attention of the court upon the trial was not called to this alleged defect, and the objection now made is altogether too technical. If eight years had elapsed certainly six years had, and the allegation was ample to give the plaintiff notice of the precise defense relied upon."

In the present case, however, the answer did not " give the plaintiff notice of the precise defense relied upon." The Statute of Limitations was pleaded twice in the answer, once among the denials, and once as an affirmative defense. The affirmative defense did not refer to the present cause of action at all. It alleged that the plaintiff had an adequate remedy at law, and that " *the cause of action at law* accrued more than six years prior to the commencement of this action and is barred by the Statute of Limitations." Certainly an allegation that some other action which the plaintiff might have brought would be outlawed in six years was not equivalent to a plea that *this* cause of action was barred in five. This was not a plea of any Statute of Limitations as a defense to the present action.

The other reference to the Statute of Limitations occurs in paragraph eleventh of the answer; it is not identified as a defense but is grouped with the denials. There it is stated: " That the alleged cause of action accrued more than six years prior to the commencement of this action and is barred by the Statute of Limitations." Apparently this allegation refers to the present action. However, it appears that in pleading the six-year statute as a bar to the present action the defendant had the same theory in view as that advanced in the affirmative defense. Apparently the only theory which the defendant had, involving the Statute of Limitations, was that the proper remedy was an action at law for money had and received, and that such an action would be barred

after six years. In pleading the statute as a defense to this action the defendant took the position that this action was in effect an action for money had and received and, therefore, subject to the six-year statute.

At no time during the trial was any mention made of the five-year limitation contained in section 132 of the Tax Law. The difference is not merely that the defendant alleged the lapse of six years when it might have alleged five. The whole theory of the defense alleged in the answer was different from the one now advanced by the county. Section 132 provides for a five-year limitation which commences to run when the redemption period expires. The defendant relied upon a six-year limitation commencing immediately upon the payment of the purchase money and the delivery of the deeds.

The defendant argues, further, that the five-year Statute of Limitations contained in the Tax Law was put in issue by the plaintiff itself by means of allegations in the complaint, which were denied in the answer.

It is perfectly clear, however, that the averments in the complaint did not refer in any way to a defense of the Statute of Limitations in favor of the defendant in this action. They referred solely to a possible defense of the statute in favor of the plaintiff in other actions which might develop between the plaintiff and any of the 1,500 former owners of the land.

It is our opinion, therefore, that neither in the pleadings nor at any stage of the proceedings in the Special Term was the point raised, and that this court must decline to consider it. The view taken may seem somewhat technical, since the answer does refer to some Statute of Limitations. But the Statute of Limitations is a technical defense, and a party who seeks the technical advantages of the law should also be held to its technical disabilities. The defendant's position in this case does not commend itself to the court. It blandly asserts that it has taken $73,000 of the plaintiff's money and has given in return a void title which it represented to be valid. When it attempts to avoid liability on the ground that the Statute of Limitations has run, it should properly be required to conform with the usual rules of pleading and proof.

But we are also of the opinion that section 132 of the Tax Law does not apply. This statute provides for two distinct results: (1) It establishes a rule of evidence by making the conveyance or certificate conclusive proof of the regularity of the prior proceedings after the lapse of two years; and (2) it provides for the cancellation of conveyances and certificates for jurisdictional defects, provided

the cancellation is sought within five years from the expiration of the redemption period. The first part of the section deals only with irregularities in connection with the tax sale, as distinguished from jurisdictional defects. (*People ex rel. Boenig* v. *Hegeman*, 220 N. Y. 118.) In the present case the defect consisted of a failure to serve proper notice of sale, and it seems to be conceded that this was jurisdictional. (*Bamonte* v. *Ocean Beach-Fire Island Co.*, 222 App. Div. 676; affd., 248 N. Y. 642.) Consequently, the first part of section 132 has no application here. The question is whether the latter part of the section, providing a remedy of cancellation for jurisdictionally defective sales, where the remedy is sought within a five-year period, applies to this action.

In our opinion the statute does not apply to the present type of action. The only remedy contemplated by section 132 is a cancellation of a conveyance, or of a tax or tax sale upon which the conveyance is based. The remedy may be sought either by application to the county treasurer (See § 158, which substitutes the county treasurer for the department of taxation and finance in the case of tax sales by counties), or by action. Here the plaintiff is not seeking a cancellation of its conveyance. It is suing for the return of the purchase money and offering at the same time to reconvey to the defendant any title it may possess. No such remedy is provided by section 132, and it must follow that the limitation of time contained in that section cannot affect this action.

Furthermore, the remedy given by the statute may take either of two forms. It may be either an action, or an application to the county treasurer. The county treasurer has no authority to refund any money except the amount paid on the tax sale, which may be repaid on application by " any person having any interest therein at the time of the sale," if the sale was defective (§ 140). This plaintiff was not a purchaser at any tax sale, but bought the land from the purchaser (the county) years after the sales had been held. Consequently, the plaintiff had no interest at the time of the sale and could not regain its money by an application to the county treasurer. All these considerations convince us that section 132 was never intended to apply to such an action as this.

There appears to be no authority on the applicability of section 132 to this type of action. The defendant relies largely on *Bryan* v. *McGurk* (200 N. Y. 332). That was an action in ejectment, brought by the original owner against the purchaser at a tax sale. The defendant claimed that the five-year limitation contained in section 132 was not controlling, because the action was in ejectment.

The court said (p. 337): " I think there is no force in this objection. The effect of a recovery in ejectment would be necessarily to avoid the sale."

In our opinion that observation has no relevancy here. The present judgment does not avoid the sale. It cancels the conveyance from the defendant to the plaintiff, but leaves the sale unaffected. This plaintiff has no interest in the sale, and asks no relief with respect to it.

The defendant also cites *Traktman* v. *City of New York* (241 N. Y. 221). There the plaintiff's predecessor in title had been the purchaser of property at a tax sale in the city of Brooklyn. It developed later that the tax levy had been illegal and that the sale was, therefore, void. The plaintiff sued the city for the return of the purchase money, and the city set up a six-year Statute of Limitations contained in an act referring solely to tax sales in the city of Brooklyn. The statute in question was altogether different from the one involved here. It referred specifically to actions brought " *to recover the amount paid* to the city of Brooklyn for any lands sold under the provisions of this act." (Italics mine.) It was held that the Statute of Limitations barred a recovery, but since a wholly different statute was involved, the case is no authority here.

The county relies also on *Matter of Restel Realty Corp.* v. *DeBur Realty Co., Inc.,* and *Matter of Burlingham L. & I. Co., Inc.,* v. *Hoyle* (both reported in 255 N. Y. 554). The cases are not in point. There the purpose of the plaintiffs is exactly the one contemplated in section 132, and the five-year limitation was a bar to their claim. Here the plaintiff seeks primarily the return of its purchase money, and, therefore, the action is not one for the cancellation of a deed or a tax sale and does not come within the statute.

There is still another reason why it should be held that section 132 does not apply to this action. The five-year statute commences to run " from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be canceled." Some of the sales involved here took place as long ago as 1915. The redemption period must have expired long before the plaintiff bought these lands from the county. The result would be that, if section 132 were applicable, the Statute of Limitations had run its course before the plaintiff acquired title; with the result that it never had any redress for a wrong. A Statute of Limitations producing such a result would be invalid. (*Bryan* v. *McGurk,* 200 N. Y. 332, 338.) The proper conclusion seems to be that the statute does not, and was not intended to, apply to such an action.

(2) *The plaintiff's right to sue.* It is argued by the defendant that an action for rescission could only be maintained by Sylvester, and not by the plaintiff. This also is a new development, which was not urged in the Special Term. If it was ever an issue, it was waived at the trial.

It would be inequitable to permit the defendant to succeed in this case on a point which it now raises for the first time. Assuming that section 132 of the Tax Law does not apply, the plaintiff's cause of action is governed by the ten-year Statute of Limitations (Civ. Prac. Act, § 53). The cause of action arose in 1926. This action was tried in 1934. If timely objection had been made at the trial to the plaintiff's right to maintain the action, and the complaint had been dismissed, there would still have been time to take an assignment from Sylvester and commence a new action. Instead, the defendant stood silent and lulled everybody into the belief that the plaintiff's status as the proper party in interest was not questioned. After the entry of judgment, it took one and one-half years to bring on its appeal, and then for the first time it raised the present point after the ten-year Statute of Limitations had run. This should not be permitted.

The authorities holding that on appeal the parties must be held to the theory adopted at the trial are very numerous. (*Stapenhorst* v. *Wolff*, 65 N. Y. 596; *Drucker* v. *Manhattan Railway Co.*, 106 id. 157; *People ex rel. Warschauer* v. *Dalton*, 159 id. 235; *Snider* v. *Snider*, 160 id. 151; *Caponigri* v. *Altieri*, 165 id. 255; *Wells* v. *Fisher*, 237 id. 79, 84.) We think the rule should be applied here, and that the defendant should not be permitted to raise the present point in this court in contradiction of the position taken at the trial.

(3) *Caveat emptor.* The last defense is that this transaction is governed by the rule of *caveat emptor;* that the buyer assumed the risk of the defect in title. It is clear that the doctrine of *caveat emptor* does not apply. The authorities cited by the defendant refer only to purchasers at tax sales. This plaintiff was not a purchaser at a tax sale. The county purchased at the sale, and the plaintiff bought from the county years afterward. Since the plaintiff was not a purchaser at a tax sale, the ordinary rules governing contracts of sale are applicable here. The defendant became liable when it made a false representation of fact, upon which the plaintiff relied. Such is the ordinary rule.

In *Mead* v. *Bunn* (32 N. Y. 275) the court said (p. 280): "Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him, as the basis of a mutual

engagement; and he is under no obligation to investigate and verify statements, to the truth of which, the other party to the contract, with full means of knowledge, has deliberately pledged his faith."

In *Hall* v. *Grays* (227 App. Div. 337) the plaintiff sued to foreclose a purchase-money mortgage. The defendant set up a counterclaim, alleging that the plaintiff had induced him to buy the property by misrepresenting the number of acres of tillable land. In reply the plaintiff relied on *caveat emptor*. The court said: " The acreage of tillable land in a man's farm is peculiarly within his knowledge. A purchaser does not have equal information, and in this case he could obtain it only by employing a man skilled in surveying and measuring land. The doctrine of *caveat emptor* does not apply."

So here, the county treasurer had knowledge of the notice given prior to the tax sale. The plaintiff had no such knowledge, and could have obtained it only through investigation by a lawyer or other person with expert knowledge. The plaintiff was, therefore, entitled to rely on the defendant's representation.

The misrepresentation in this case was not deliberate, but that does not change the rule. In *Hadcock* v. *Osmer* (153 N. Y. 604) the court said (p. 608): " Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not and it is actually untrue, he is guilty of falsehood, even if he believes it to be true, and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud."

The judgment should be affirmed, with costs.

Present — LAZANSKY, P. J., CARSWELL, ADEL, TAYLOR and CLOSE, JJ.

Judgment unanimously affirmed, with costs.