Nathan D. Lapham, Off. Ref.
This uncontested action for annulment was referred to me as Official Referee to hear, try and determine by order dated January 11, 1957; proof was taken February 13 following with decision reserved, and the case submitted to me late in September, 1957.
The plaintiff was a mature woman of 40 with a 13-year-old daughter by a previous union when she married the defendant, then 52 and the father of a 5-year-old daughter. Plaintiff testified that after a six-month courtship he told her he was willing to support her daughter, and that his “ home was furnished off nice; everything is all right. Ton don’t have to worry about that ’ ’. A week later they were married. Apparently plaintiff, responsible for the care and welfare of her child, gave up her factory job and entered into this union without any check or inquiry as to her future home. She must have known she was marrying a man of limited resources for she said he told her he had no money for a honeymoon. More disillusioning, she said he took her to a house with inadequate and broken furniture and no food, immediately asked her for $200 to fix the roof (which seems strange as she spoke of it as a rented house), and in answer to her question as to why he married her, said he wanted a housekeeper and someone to take care of his daughter and never meant to be a husband to her or have more children. Faced with this frank statement at the inception of the marriage, she stayed on and, after a quarrel, it was he who separated himself from the family circle and retreated upstairs by himself.
In my opinion, plaintiff has failed to establish any fraud on the part of her husband by reason of the lack of furniture. True, she says the house was poorly furnished, that there was *563 no kitchen set and the furniture was broken down. The fact it did not measure up to her expectations, in and of itself, does not prove substantial inadequacy or spell fraud. What may have been disappointing in her eyes as a woman may have appeared sufficient and satisfactory to a man. Plaintiff’s daughter testified that, while at first she had to share a bed with his daughter, he soon provided her with a folding bed and in about three months with a regular bed, which is some indication that he was attempting to meet the needs of his enlarged family within his means so to do.
Frankly, I am far from impressed with plaintiff’s claim of fraud based on his alleged refusal to live with her so that children might be born. In the first place, this case has every earmark of a marriage of convenience, each hoping to gain material assistance in his or her existing obligations and the record is not compatible with plaintiff’s present claim that she was interested in adding to her responsibilities by bearing more children. Her testimony fluctuates and lacks the certainty and definiteness usually associated with truth but, as I understand, she claims the marriage was never consummated; that he moved upstairs after the first night, then a month later left the house, that about six months after the marriage she ‘ ‘ had to take him to' court ” for nonsupport, and that he is still supporting her under direction of the court. She testified that in 1954, after a four-year absence, he returned to the house “because he said he didn’t want to pay two rents ” but that they did not live together and finally she left some time in the late summer of 1956. She produced no corroborative evidence, documentary or otherwise, save that of her daughter who was only 13 at the time of the marriage. There is grave question that so young a girl sensed the full meaning and impact of many of the events in this ill-starred union, and it is not surprising that her testimony lacks clarity and precision. She did support her mother’s claim that the house was poorly furnished, that there was no food until her mother bought it the next morning, and that the day after the wedding he sought money from his bride to fix the house. The daughter said her mother and the defendant didn’t get along, argued, and, under leading, that one quarrel centered around his assertion that he wasn’t going to support plaintiff and she would have to go to work. While at one point this witness testified defendant slept with her mother “ that night ”, she placed his exodus to the upper floor at ' ‘ about a month after they were married ’ ’ and from the home at about six months, — testimony most damaging to *564 her mother’s claim of no cohabitation after she learned of the alleged fraud as to condition of the home and normal sex relations almost immediately after the wedding.
This impresses the Referee as a case where the plaintiff levels a battery of charges against the defendant in an effort to lend stature to her desire for freedom. There seems little question that this was an unsuccessful matrimonial venture of two mature persons, each jockeying for material advantage ■ — a marriage marred by quarrels which flared up the day after the wedding. These parties were not youngsters, swept off their feet by the excited and emotional surge of youth. Bach had been seasoned by a previous matrimonial experience. It would seem that a reasonably prudent woman and mother, acquainted with the hardships of a life of labor, would have made some investigation of the home into which she was about to transplant her life and that of her young daughter, especially in view of her present claim that the furnishings were a matter of prime importance to her, but she did nothing before the marriage and continued to live in the home for over five years. She has failed not only to satisfy the Referee that she was the victim of fraud because of the condition of the home and its accouterments, or by reason of his alleged failure to live with her so that children might be born, but, also, she has failed to offer convincing evidence that she did not voluntarily cohabit with defendant after the discovery of these asserted frauds, which according to her followed so hard on the marriage.
As to his failure to meet his obligation of support, here again the proof is so haphazard and incomplete that it is most difficult to follow. It is understandable that plaintiff was shocked to find an empty larder and be met with the request for $200 when her husband took her to her new home. While at one point it would seem plaintiff says defendant informed her immediately that he did not want to support her, at another, when speaking of the time he left the house as I understand, she testified “ After that he didn’t want to support me. So I had to take him to court for support”. She then said this was about six months after the marriage which would correspond with the time when her daughter said Mr. Johnson moved out of the house, and when plaintiff said she had to go to work. From this the inference is strong that, after an unprepossessing beginning, he was supporting the family up to the time of leaving the house. Thus, interpreting the record in a way most favorable to plaintiff and accepting as true the *565 testimony that he withdrew to the upstairs after the first month, the harrier of condonation through voluntary cohabitation after discovery is removed from her claim of fraud through failure to support. But this plaintiff, who claims that immediately after the marriage she learned she had been defrauded on two counts (condition of the home and failure to live with her as her husband), and that now six months later she discovered yet another fraud by reason of his refusal to support, did not then assert fraud as a ground for freedom but, rather, sought the aid of the court to enforce her rights under the marriage. She testified that under court order he was paying the rent and contributing up to the time of the hearing, at least, and that in 1954 he returned to the house to save double rent but confined himself to the upstairs and did not live with her.
There are so many gaps in the testimony and it is not within the province of the court to attempt to fill them by speculation. Plaintiff did not tell us whether or not defendant left his little daughter with her when he absented himself from the family. She did not assert the presence of his child as a reason for her remaining in this home which she would now have us believe was inadequate and distasteful to her. Apparently she continued to live there some two years after his return. She does not tell us why she finally left. Certain it is she did not predicate her leave-taldng on any act or omission of defendant for she showed no change in the condition under which she had been living for some time.
It is understandable that at her age and with her responsibilities, the promise of support and home may have weighed heavily in plaintiff’s consent to this marriage and, if she had established that her consent was obtained through fraud on the part of the defendant, uncondoned by her, she would be entitled to relief (Siek v. Siek, 196 Misc. 165, affd. 276 App. Div. 1035). Of course, in entering into the contract, defendant assumed the obligation to provide commensurate with his earning capacity. According to his wife’s story (which he, although represented by counsel, has not seen fit to contest) there came a time when he ceased to fulfill this duty until prompted by the court. She says he has been paying since the middle of 1951 although she was forced to go to work to make ends meet. Probably defendant’s wages as a clerk were modest but, according to the evidence, he did work and there is not a scintilla of evidence that he squandered his income. Nor is there any evidence he misled her as to his earning power. She says he asserted his willingness to support her and her daughter, but *566 it is evident he did not lead her to believe he was affluent for she says he told her he did not have money for a honeymoon. Many a wife, whose husband is supporting his family, has worked so that by her earnings she might raise their standard of living. The plaintiff has kept the court entirely in the dark as to the facts and circumstances surrounding her husband’s going and his alleged omission of support. On the whole record, the Referee does not believe she has been frank and told the whole truth concerning this marriage and the cause of the troubles that beset it. Simply placing all blame on the defendant, without credible substantiation, is not enough.
But a further barrier stands in the way of plaintiff’s success. When she sought the aid of the court to compel defendant to support her, she must have rested upon the assertion of a valid marriage. An action for annulment based on fraud, to succeed, must be based on proof that the marriage was void ab initio. The principle is now fully accepted in this State that where a spouse takes any action following the discovery of the alleged fraud which recognizes the binding force of the marriage, such an one relinquishes the right to relief predicated on the fraud. In the leading case on this subject, Mr. Justice Page, writing for the First Department in an action in which a husband sought an annulment nearly a year after he had entered into a separation agreement with his wife, said: “ on the discovery of the fraud, the plaintiff was required to immediately leave the defendant, and live separate and apart from her. His action for an annulment should have been promptly brought. Instead of doing this, the plaintiff entered into an agreement, recognizing the defendant as his wife and agreeing to contribute to her support through life * * * She relinquished certain rights, by reason of this agreement, and he recognized his obligation as a husband to contribute a certain sum to her support as his wife. And for nearly a year this contract was performed. In my opinion, with full knowledge of the facts which would have entitled him to an annulment of the contract, he recognized its binding force and affirmed it and thereby lost his right to thereafter disaffirm.” (Butler v. Butler, 204 App. Div. 602, 608.)
Applying the same principle, Mr. Justice Froessel, now of the Court of Appeals, said: “ She cannot stand upon a contract, demand its enforcement, accept its benefits, and then seek its repudiation.” (Russo v. Russo, 168 Misc. 551, 552.) (See, also, Zalewski v. Zalewski, 101 N. Y. S. 2d 950.)
The application is denied and the complaint is dismissed.