■ MARILYN P. ZEITLAN, Appellant, v. HARRY ZEITLAN et al., Respondents.— In an action for separation, in which the defendant husband counterclaimed *inter alia,* to declare the nullity of his marriage to plaintiff, plaintiff appeals from portions of a judgment of the Supreme Court, Queens County, entered October 11, 1967, which, *inter alia,* dismissed the complaint, declared said marriage void, denied alimony for her, and granted a support allowance of $60 a week for plaintiff's child, who had been adopted by the husband. By the notice of appeal, the portion of the judgment which awarded custody of the child to plaintiff was excepted from the appeal; and, by her brief, plaintiff has abandoned so much of the appeal as included the provisions of the judgment which dismissed the third and fourth counterclaims, granted the husband visitation rights as to the child, and directed the husband to make payments for support of the child and for an additional counsel fee. Judgment modified, on the law and the facts, by (1) striking therefrom the eleventh decretal paragraph, which denied alimony, and (2) providing, in lieu thereof, that defendant shall pay plaintiff alimony of $100 a week, for her support, commencing as of September 1, 1967, in the same manner as, and together with, the payments directed in the judgment to be made for support of the child. As so modified, judgment affirmed insofar as appealed from, with costs to appellant against respondent Harry Zeitlan. In 1958 the defendant husband (referred to herein as the defendant) obtained a unilateral Mexican divorce from his former wife, the codefendant, and one month later married plaintiff in Connecticut. In 1962 his former wife sued him in New York for a separation; he settled that action by an agreement which, *inter alia,* provided that his former wife would file an appearance and acceptance of the divorce decree in the Mexican action; and in 1962 the former wife did file such papers in the Mexican court and that court made an "order" recording her appearance and acceptance of the divorce decree. Plaintiff and defendant did not thereafter remarry, but continued to live together until 1966, when this separation action was instituted. On a prior appeal we held that defendant was not estopped to attack the Mexican divorce which he had himself procured unless the proof at trial would establish that he had induced plaintiff to marry him by fraudulent misrepresentations that the divorce was valid (*Zeitlan* v. *Zeitlan,* 27 A D 2d 846). After the trial, the trial court found that defendant had not induced plaintiff to marry him by any such fraudulent misrepresentations; and we agree with that finding. Nor do we find in this record any other grounds for estoppel that were not previously considered and overruled in the earlier appeal in this case or in *Marum* v. *Marum* (8 A D 2d 975) or in *Alfaro* v. *Alfaro* (5 A D 2d 770, affd. 7 N Y 2d 949). Hence, defendant is not estopped from attacking the validity of his Mexican divorce from his former wife. On this appeal, plaintiff for the first time contends that defendant's counterclaim for a judgment declaring their marriage void, brought eight years after their marriage, is barred by the six-year Statute of Limitations (CPLR 213, subd. 1), applicable to actions which have no specific statutory time limitations. We find no merit in that contention. Subdivision (a) of section 140 of the Domestic Relations Law, which authorizes an action to declare the nullity of a bigamous marriage, provides that such action "may be maintained by either of the parties during the life-time of the other". Substantially the same language in predecessor and related sections was construed to mean that the only applicable time limitation was "the lifetime of the parties"

(*Chittenden* v. *Chittenden*, 68 Misc. 172, 176; *Duffy* v. *Duffy*, 23 Misc 2d 268; *Campbell* v. *Campbell*, 239 App. Div. 682, affd. 264 N. Y. 616). Hence, the six-year Statute of Limitations does not apply or bar this counterclaim. The cases relied on by plaintiff (*Romano* v. *Romano*, 19 N Y 2d 444; *Sorrentino* v. *Mierzwa*, 30 A D 2d 549) are distinguishable and not controlling, since they involved different facts and different statutes. In any event, plaintiff cannot now raise this point; she did not raise it in her pleadings, on the prior appeal, or at the trial, and she consequently cannot urge it for the first time on this appeal (*Marum* v. *Marum*, 8 A D 2d 975, *supra*; *Lindlots Realty Corp.* v. *County of Suffolk*, 251 App. Div. 340, affd. 278 N. Y. 45). Concerning the question of the validity of the marriage in Connecticut in 1958, that marriage followed defendant's unilateral Mexican divorce from his former wife, but it preceded the latter's 1962 appearance in the Mexican action; hence, it was consummated while that Mexican divorce was still unilateral. The courts of Connecticut, like those of New York, do not recognize the validity of a unilateral Mexican divorce (*Marum* v. *Marum*, 8 A D 2d 975, *supra*; and cases cited therein), so as of 1958 Connecticut, like New York, would have considered defendant still married to his former wife and his marriage to plaintiff a bigamous one. At the trial of this action, an expert on Mexican law testified, without contradiction, that the 1962 appearance of defendant's former wife in the Mexican action, her then acceptance of the Mexican divorce judgment, and the Mexican court's " order " recording her appearance and acceptance of the judgment were unnecessary and juridical nullities, since the judgment was deemed valid, final and binding in Mexico one day after it was rendered and the Mexican courts lack power to modify a final judgment after it has been rendered. That expert also testified, similarly without contradiction, that *nunc pro tunc* orders are unauthorized under Mexican law, so the 1962 " order " recording the former wife's appearance in the action could have no *nunc pro tunc* effect. Hence, under Mexican law the former wife's 1962 appearance and the order entered thereon could not be deemed to have validated the unilateral divorce decree *nunc pro tunc* as of the date it was granted in May, 1958. Nor could the 1962 appearance and " order " be deemed, under New York law, to have made the Mexican divorce bilateral and valid, *nunc pro tunc* as of May, 1958, since in New York a *nunc pro tunc* order cannot be made to supply a jurisdictional defect in a prior judgment, or record a fact which did not exist at the time of the rendition of the judgment (*Merrick* v. *Merrick*, 266 N. Y. 120, 122; *Cornell* v. *Cornell*, 7 N Y 2d 164, 167–168). As the unilateral Mexican divorce was not made bilateral and valid, *nunc pro tunc* as of May, 1958, plaintiff's marriage to defendant in June, 1958, was consummated at a time when that divorce was still unilateral and not recognized in New York or Connecticut; at that time defendant was still married to his former wife; and the marriage between plaintiff and defendant consequently was bigamous and void. Nor was that bigamous marriage validated by the fact that four years later, in 1962, defendant's divorce from his former wife became bilateral and then recognizable as valid in New York because of the latter's belated appearance in the Mexican action (*Rappel* v. *Rappel*, 39 Misc 2d 222, 225; cf. *Alfaro* v. *Alfaro*, 7 N Y 2d 949, *supra*). The cases relied on by plaintiff (*Hytell* v. *Hytell*, 44 Misc 2d 663; *Hollis* v. *Hollis*, 6 Misc 2d 208; *Chusid* v. *Chusid*, 207 Misc. 1039) are readily distinguishable and do not support her position. *Hytell* did not hold that a wife's post-judgment appearance in her husband's Mexican divorce action validated the unilateral Mexican judgment in New York *nunc pro tunc* as of the date of the judgment; it merely held that such appearance made the judgment bilateral and valid as of the time the wife appeared in the action and accepted the judgment. *Hollis* and *Chusid* held

only that under Nevada law a unilateral Nevada divorce could be made bilateral *nunc pro tunc* by the defendant's post-judgment appearance in the Nevada action and a resultant amendment of the Nevada judgment; and that, under the "full faith and credit" provision of the Constitution, the New York courts would recognize the amended Nevada judgment which had made the unilateral divorce bilateral *nunc pro tunc*. However, despite our agreement with the trial court that defendant is entitled to a judgment declaring the nullity of his marriage to plaintiff and that plaintiff's separation action must for that reason be dismissed, we believe the trial court could and should have awarded alimony to plaintiff. Where a wife sues for a separation and the husband (as at bar) counterclaims to declare the marriage void for bigamy, the court has power to award alimony to the wife even though it grants judgment to the husband on his counterclaim and dismisses the wife's action because of the absence of a valid marriage (*Johnson* v. *Johnson*, 295 N. Y. 477; McKinney's Cons. Laws of N. Y., Book 14, vol. 2, p. 134 *et seq.* [Practice Commentary to Domestic Relations Law, § 236]). It has such power because the husband's counterclaim is the equivalent of an action for that relief, and section 236 of the Domestic Relations Law empowers the court to award alimony to a wife who has unsuccessfully defended an action by her husband to declare the nullity of their marriage. *Marum* v. *Marum* (8 A D 2d 975, *supra*) is not to the contrary. In *Marum* the husband did not interpose a *counterclaim*, but only a *defense* that his wife's separation action did not lie because their marriage was void. Under all the circumstances of this case, we believe plaintiff was entitled to an award of alimony; and justice requires that defendant, "the offending husband * * * [should not be permitted], at his pleasure, [to] avail himself of the invalidity of a marriage — void because of his own misdeed — and slough off the financial responsibilities which he had voluntarily assumed" (*Johnson* v. *Johnson*, 295 N. Y. 477, 481, *supra*). Insofar as the trial court may have found to the contrary, we disagree with such finding; and insofar as the trial court's decision may be construed as a discretionary denial of alimony (though the denial seems to have been bottomed basically on an erroneous conclusion of lack of power), it is our opinion that on this record such discretionary denial would be an improvident exercise of discretion. Though the proof of the financial circumstances of plaintiff and defendant is far from clear, we believe there is sufficient basis in the record for a determination that an alimony award of $100 a week for plaintiff, in addition to the $60 a week awarded by the trial court for support of the child, would be fair. Rabin, Acting P. J., Hopkins, Benjamin, Munder and Martuscello, JJ., concur.