PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, Appellant, *v.* THOMAS COCHEO, Respondent.

Second Department, March 21, 1939.

*Hugh G. Bergen,* for the appellant.

*Frances R. Schoenbach,* for the respondent.

CLOSE, J. The action is brought on a promissory note for $116,400 made by the defendant on October 26, 1931, and payable in thirty days. The complaint is in the usual form. It alleges that various payments were made on account totaling $24,195.15, and demands judgment for the balance, amounting, with protest fees, to $92,206.25. Denying that there is any sum due on the note, the defendant, in his answer, alleges five defenses and two counterclaims. The defenses are based, respectively, on the theories of payment, mutual mistake, lack of consideration, conditional delivery and fraud. The first counterclaim alleges an agreement between the parties whereby the plaintiff agreed, on October 17, 1929, to sell certain securities held as collateral to a loan and to refund to the defendant the balance of the proceeds after the loan had been paid, which agreement the plaintiff breached by failing to sell the securities, to the defendant's damage in the sum of $29,672.50. The second counterclaim is merely a repetition of the first and may be disregarded. In reply to the counterclaim the plaintiff set up the six-year Statute of Limitations.

The plaintiff's motion for summary judgment has been denied. The affidavits submitted by the plaintiff show *prima facie* the existence of the indebtedness, and the question presented is whether the defendant's affidavits raise a triable issue. It is not enough that there be a factual dispute. The issue must be one which the defendant is entitled to litigate. It must appear that he has a defense which is sufficient in point of law.

The defenses and counterclaims are all based upon the same state of facts, which may be summarized from the defendant's affidavit, as follows: In October, 1929, the defendant was indebted to the American Trust Company in the sum of $116,000, and had deposited certain shares of stock with that bank as security for the loan. Immediately following the severe stock market decline on October seventeenth he called at the office of the American Trust Company, Bridge Plaza Branch, and talked to the vice-president, Mr. Bahntge.

The defendant and Bahntge estimated that the collateral was then worth about $30,000 more than the amount due on the note. Convinced that the market would decline further, the defendant directed Bahntge to sell the securities at current prices, retire the note and pay him the balance. Bahntge agreed to do so. A few days later the market collapsed. The defendant then discovered that Bahntge, who claimed to have acted on instructions from his superiors, had ignored the selling order. Bahntge expressed his regret at the situation and entered into the following arrangement with the defendant: It was to be understood that the defendant owed the bank nothing, and that the stock was the property of the bank, but that in order to conceal the true facts from the bank examiners the transaction would still appear on the books as an indebtedness on a note secured by collateral. Thereafter Bahntge asked the defendant to sign renewal notes " in order to preserve the legal situation of the bank."

On November 17, 1930, American Trust Company merged with the plaintiff bank, and Bahntge became a vice-president of the merged institution. At that time the amount of defendant's indebtedness was $124,900. After the merger the defendant paid $8,500 on account, leaving a balance apparently due of $116,400, and gave the plaintiff new notes for that amount from time to time. The note sued upon here was the last renewal note. Before it had been made Bahntge severed his connection with the plaintiff. It is claimed in defendant's behalf that before leaving Bahntge acquainted his successors with all the facts. Some time in 1932 defendant called at the bank and was asked by one of the officers what he intended to do about paying the note. He says he told the officer that he owed the bank nothing and explained why, and that the officer replied that he had never heard of it but that the bank would carry out the arrangement if inquiry confirmed it. The defendant asserts that from that day in 1932 until the commencement of this action in 1938 he heard nothing from the bank about the indebtedness.

This account of the transaction is furnished by the defendant and corroborated by Bahntge. Officers and employees of the bank and of the former American Trust Company assert that they never heard of such a claim prior to the present action. Significant omissions and inconsistencies are to be found in the defendant's affidavits. There is no writing of any kind to support his story. There is no claim that the defendant ever made even an oral demand upon the plaintiff that it fulfill the agreement made in 1929. Nevertheless, it is evident that the assertions of the defendant and the denials made by the plaintiff raise an issue of fact which cannot be

disposed of by motion unless the facts stated by the defendant are insufficient in law either as a defense or as a counterclaim. The main question to be decided, therefore, is whether such facts, assuming them to be true, constitute a legally sufficient answer.

The first and second defenses are readily disposed of because neither is supported by any evidence. In the first defense it is alleged that on October 17, 1929, the loan was paid in full out of the proceeds of the sale of defendant's collateral. It is not apparent how the note could have been paid two years before it was made; and in addition it is undisputed that the collateral was not sold until 1932, when the defendant was credited with the proceeds. The second defense alleges that at the time of the making of the note there was no indebtedness on the defendant's part and that the note was made by mutual mistake. The defendant's affidavits show, however, that he knew all the facts and made the renewal notes deliberately for the purpose of helping the bank to conceal the transaction from the bank examiners. There could have been no mistake of fact. These two defenses are without factual support.

The theory of the third defense is absence of consideration. It is alleged that if the bank had sold the collateral in 1929 the indebtedness would have been paid in full. The fact remains that the collateral was not sold and that the continuing indebtedness furnished the consideration for each of the renewal notes. The Special Term upheld this defense, but for a different reason. It was said that there would be no consideration if the note was made merely as an accommodation with no intention that the defendant should be held liable. It is now thoroughly established that such a defense is insufficient as against a banking institution. For reasons of public policy one who delivers to a bank an instrument binding in form is estopped from asserting thereafter that simultaneously the parties agreed that the instrument should not be enforced. (*Mount Vernon Trust Co.* v. *Bergoff*, 272 N. Y. 192; *Rothschild* v. *Manufacturers Trust Co.*, 279 id. 355.)

The fourth and fifth defenses are open to the same objection. To allege, as the defendant does, that the note was delivered on condition that the defendant would be credited with more than its face value, or that plaintiff fraudulently promised to allow such credit, is merely to say in other language that an agreement was made to absolve the defendant from liability on an apparently valid instrument. In *Mount Vernon Trust Co.* v. *Bergoff* (*supra*) it was said that " The State cannot sanction any device intended to give a false appearance to a transaction or increase the apparent stability of a bank." The defendant is estopped from asserting any such defense, regardless of the form in which it may be pre-

sented. The fifth defense is bad for the additional reason that the representations which are claimed to be false are merely promissory in character. (*Adams* v. *Clark*, 239 N. Y. 403.)

It thus appears that all the defenses are either insufficient in law or unsupported by the proof. There is no defense to the action. What the defendant has, if he has anything, is a counterclaim against the bank for breach of the agreement to sell the securities in October, 1929. The remaining question is whether the counterclaim is barred by the Statute of Limitations. If so, the plaintiff is entitled to judgment.

Since the note was made on October 26, 1931, and was payable in thirty days, the plaintiff's cause of action arose on November 26, 1931. This action was commenced on October 20, 1937, one month before the expiration of the six-year limitation. The long delay in commencing the action is not explained, but the plaintiff was, of course, within its rights in bringing the action at any time within the statutory period. In the meantime, however, the six-year statute had run against the defendant's cause of action for breach of the agreement to sell his collateral. That agreement had been made on October 17, 1929. The bank was obliged to execute the selling order within a reasonable time. (*Zimmermann* v. *Heil*, 86 Hun, 114; affd., 156 N. Y. 703.) A reasonable time in this case meant almost immediately. According to the defendant's story it meant no longer than the end of October, because by that time the opportunity to sell advantageously had been hopelessly lost and both parties abandoned the idea of selling under the prevailing conditions. The defendant's cause of action, therefore, arose no later than the end of October, 1929, and his time to commence an action expired by the end of October, 1935. The statute had run against him long before his counterclaim was interposed in this action.

Section 61 of the Civil Practice Act provides that " A cause of action other than for the recovery of real property, upon which an action cannot be maintained as prescribed in this article, cannot be effectually interposed as a defense or counterclaim." There are cases in which it has been held that where the cause of action and the counterclaim together constitute the several parts of an entire transaction the counterclaim may be interposed even though the statute has run against it. Thus, in *Herbert* v. *Day* (33 Hun, 461), the plaintiffs sued for the value of work done in constructing a cellar, and the defendant was permitted to counterclaim for breach of a covenant in the contract to make the cellar watertight. In *Maders* v. *Lawrence* (49 Hun, 360) the plaintiff sued on a note given in payment for a horse, and the counterclaim was for breach

of a warranty that the horse was sound. This is not such a case. The defendant's order to sell his securities was no part of the contract which gave rise to the defendant's indebtedness and which is represented by the promissory note. It may be true, as the defendant claims, that after the American Trust Company had breached its agreement to sell the collateral a new contract was made whereby the note was not to be enforced, the collateral was to belong to the bank, and the defendant was to have credit for the market value of the collateral as of October 17, 1929. Assuming that to be true, the order to sell the collateral was something apart from the later contract. It antedated the later contract, and was a closed transaction by the time the later contract was made. Under no view of the facts can it be said that the breach upon which the counterclaim is based arose out of the same contract as the plaintiff's cause of action. The Statute of Limitations is, therefore, a complete defense to the counterclaim. (*Fish* v. *Conley*, 221 App. Div. 609; *Cooley Trading Co., Inc.*, v. *Goetz*, 247 id. 607; affd., 273 N. Y. 488.)

The order should be reversed on the law and the facts, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

LAZANSKY, P. J., HAGARTY, CARSWELL and JOHNSTON, JJ., concur.

Order reversed on the law and the facts, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.