In the Matter of the Estate of FRANCIS R. HOWELL, Also Known as FRANCIS ROLLINS HOWELL, Deceased.

Surrogate's Court, Kings County, April 29, 1940.

*Connolly & Frey,* for Mary C. Howell and The Chase National Bank of the City of New York, as executors, etc., petitioners.

*Julius Hallheimer* [*Moss & Moss,* of Philadelphia, with him on the brief], for the liquidating trustees of Asset Building and Loan Association, objectants.

*Paul G. Gravenhorst,* special guardian for Francis R. Howell, Jr., and Hazel M. Holmes, infant contingent remaindermen of the trust for decedent's widow.

WINGATE, S.   Francis R. Howell, the present decedent, acquired fifty double shares of Simon Greenebaum Building and Loan Association, a Pennsylvania corporation, in September, 1925, and duly made all payments in respect of them to and including October, 1929.   These aggregated $4,900.   On November 28, 1928, he borrowed $2,400 from the corporation, giving a note under seal.

On October 30, 1929, he gave notice to the corporation of his intention to withdraw his shares. An extended correspondence between the decedent and the corporation ensued (Exhibit D), involving the exchange of ten letters up to July 28, 1930, those from the decedent pressing for payment, and the replies of the corporation expressing regret at the delay in solution and promising as prompt satisfaction as circumstances would permit.

On September 8, 1930, the corporation merged with two other like concerns, the new organization adopting the name of Asset Building and Loan Association. The decedent in no way participated in this consolidation nor assented thereto either in person or by proxy. At the time it took place the shares of the Simon Greenebaum Association were worth approximately sixty-six and two-thirds of the amounts paid thereon.

The decedent continued to press for his payment, and on November 10, 1930, this was definitely refused by the new company on the stated ground that " under the terms of the agreement of merger [in which the decedent had not participated and to which he had never assented] all notices of withdrawal given to the Association were to be considered as cancelled and there were to be no withdrawals for a period of two years from the date of the merger." Certain additional correspondence ensued, in which the decedent attempted to obtain his asserted rights, all of which met a negative response.

In December, 1936, the affairs of the consolidated company passed into the hands of liquidating trustees, who presented a claim against the estate of the decedent for the amount of the note, namely, $2,400, with interest for about ten years. The executors have rejected the claim, asserting the right to set off the asserted obligation on the shares, which is in excess of this sum. The trustees have objected to the account on this ground and the controversy has been submitted to the court on a stipulation of facts of which the foregoing comprise the salient features with the addition that, on October 30, 1929, when the decedent served his notice of withdrawal, the Simon Greenebaum Association was " unable to pay to all of its creditors and stockholders one hundred cents on the dollar in payment of its obligations."

Before approaching the consideration of the rights, if any, acquired by the decedent as a result of the service of his notice of withdrawal, it is to be noted that no intimation has been made by the objectors, either in their assertion of claim, in the stipulation, in their memorandum or otherwise, raising any question as to the claim of the decedent being barred by the Statute of Limitations. " This statute operates only as a bar to the remedy and inasmuch

as the defendant has not pleaded it in his answer it is not available as a defense * * * We assume that it is elementary law that a party to an action who would take advantage of a statute of limitations must plead it as a defense." (*Nehasane Park Assn.* v. *Lloyd*, 167 N. Y. 431, 438; *Lindlots Realty Corp.* v. *County of Suffolk*, 251 App. Div. 340, 343; affd., 278 N. Y. 45, 54; *Locke* v. *Pembroke*, 280 id. 430, 434.)

It follows that the question of the propriety of setoff of the asserted claim of the estate on grounds of staleness not having been raised, the rules precluding setoff of a claim barred by the Statute of Limitations (Civ. Prac. Act, § 61; *President & Directors of Manhattan Co.* v. *Cocheo*, 256 App. Div. 560, 565; *Fish* v. *Conley*, 221 id. 609, 612; *Cooley Trading Co., Inc.,* v. *Goetz*, 247 id. 607; affd., 273 N. Y. 488) are not presently applicable and the controversy is determinable solely on the merits.

The question thereupon arises as to the nature of the rights of the decedent following the giving of the notice of withdrawal on October 30, 1929.

As stated in *Stone* v. *Schiller Building & Loan Assn.* (302 Penn. St. 544, 551; 153 A. 758): " A building and loan association is much like a partnership though possessing corporate rights. * * * Unlike a corporation, its shareholders may withdraw their contributions under certain limitations." The conditions to which reference is made are statutory, the pertinent enactments being stated in *Brown* v. *Victor Building Assn.* (302 Penn. St. 254, 257; 153 A. 349) as follows: " The Act of April 29, 1874, P. L. 73, section 37, provides, ' Any stockholder wishing to withdraw from the said corporation, shall have power to do so by giving thirty days' notice of his or her intention to withdraw, when he or she shall be entitled to receive the amount paid in by him or her, less all fines and other charges; * * * Provided, that at no time shall more than one-half of the funds in the treasury of the corporation be applicable to the demands of withdrawing stockholders without the consent of the board of directors.' The Supplementary Act of April 10, 1879, P. L. 16, section 2, reads, ' Payment of the value of stock so withdrawn shall only be due when the funds now by law applicable to the demand of withdrawing stockholders are sufficient to meet and liquidate the same, and then only in the order of the respective times of presentation of the notice of such withdrawals.' "

The present claimants strongly insist that despite the absence of any intimation in the statutes to that effect, no notice of withdrawal by a stockholder produces any effect whatsoever if, at the time the notice is given, the assets of the particular association are not equal to the claims of all of its creditors and the sums due all of its stock-

holders. Since their argument is preponderantly predicated upon this premise, and since, admittedly, the condition of the Greenebaum Association did not comply with this description at the time the notice was given by the decedent, this issue requires preliminary evaluation.

The situation of a stockholder following the giving of such a notice receives treatment in the comparatively early case of *United States Building & Loan Assn.* v. *Silverman* (85 Penn. St. 394), in which the court says (at p. 397): " It will be seen from the above, that after thirty days' notice the membership of the stockholder is determined, and he becomes a creditor of the corporation to the amount he has paid, less fines and charges. That he may, upon the refusal of the company to pay him, sue it, and recover judgment, just as any other creditor, is not doubtful. * * * · Whilst it is certainly intended that the operations of the corporation shall not be embarassed by having the whole amount of its cash assets taken, in order at once to pay withdrawing stockholders, yet it as certainly does not intend that no provision shall be made for their payment, and that they may be indefinitely postponed, even from judgment, by a plea of *quasi* insolvency. We think the design of the act can be better met by giving the plaintiff judgment, and then, should it seem equitable to the court below, it may restrain execution, in order that the defendant may have a reasonable time within which to raise the money for the payment of such judgment, so that there may be no undue derangement of its affairs." (To like effect, see *Lepore* v. *Twin Cities National Building & Loan Assn.*, 5 Penn. Super. Ct. 276, 279; *Gasparo* v. *Twin Cities National Building & Loan Assn.*, Id. 280.)

The legal reliance of the claimants for their assertion that inability of the company at the time the notice is given to pay all creditors and stockholders in full, accomplishes a complete destruction of the statutory rights expressly accorded, and renders the notice an utter nullity, is wholly based upon the decision in *Stone* v. *Schiller Building & Loan Assn.* (302 Penn. St. 544; 153 A. 758), extended excerpts from which are quoted in their brief. Since even these excerpts are equivocal on the issue, and it is, in any event, elementary that the language of an opinion is of importance only when viewed in its relation to the issues litigated and the result attained (*Colonial City Traction Co.* v. *Kingston City R. R. Co.*, 154 N. Y. 493, 495; *Crane* v. *Bennett*, 177 id. 106, 112; *Hogan* v. *Board of Education*, 200 id. 370, 373; *Matter of Suderov*, 156 Misc. 661, 664, 665; affd., 249 App. Div. 763; affd., 274 N. Y. 525; *Matter of Davison*, 137 Misc. 852, 858; affd., 236 App. Div. 684; *Matter of Grube*, 169 Misc. 170, 191, and authorities cited), an examination of the decision becomes of importance.

As disclosed by the opinion, A. L. Lange was the secretary of the Schiller Association. He misappropriated $237,000, rendering the association insolvent. This was discovered in January, 1910. Two months previously his father had subscribed for 235 shares of the association, taking title in the names of himself and his wife. In partial restitution for the defalcation, he purported to assign the shares to the association and they were canceled of record. The son then absconded. The father, in 1915, gave notice of withdrawal and the shares were later assigned by them to their daughter who brought suit against the association and was awarded judgment on the ground that the original assignment by the father to the association was defective. The daughter, as judgment creditor, then brought this proceeding in equity to recover the amount of her judgment from the officers and stockholders. All other claims had been paid. It was demonstrated that the daughter, who had been an employee of the association, was fully aware of the cancellation of the stock and the distribution of its assets. In this connection the court in *Stone* v. *Schiller Building & Loan Assn.* (*supra*) observed (at p. 556): " But if from peculiar knowledge there was imposed on her a special duty, not to the association as such, but to other members, her right may be curtailed or the liability of the officers modified."

It was determined that the plaintiff should receive a sum equal to the *pro rata* share of the assets of the association which had been distributed to other shareholders. In attaining this result, the court makes the following significant statement (at p. 554): " When the notice of withdrawal was given in this case the association was in process of liquidation. Appellee's judgment, *under all the circumstances of this case*, is entitled only to the benefits of an ordinary shareholder." (Italics supplied.)

Even without this significant limitation to the facts of the individual case, or result attained therein, it is obvious that the court was faced by an outrageous situation which warranted a straining of its equitable authority for the attainment of an approximation of justice. That it experienced some difficulty in the process despite the obviousness of the legal fraud which has been perpetrated, is attested by the length of the opinion.

As clarified in *Weinroth* v. *Homer Building & Loan Assn.* (310 Penn. St. 265, 271, 273, 274; 165 A. 28) the law of Pennsylvania appears to be that a shareholder in a building and loan association possesses an absolute right to terminate his relationship, as such, at any time upon giving the statutory notice of withdrawal, and his rights become " fixed and stationary * * * at the time the notice of withdrawal became effective before merger " (p. 273).

He may recover a judgment for the face of his claim but " the return on his judgment can be no greater than the value of his proportionate share in the constituent association at the time of merger, considering the rights of other shareholders " (p. 274). The " relative rights of claimants  *  *  *  are (1) the claims of preferred and general creditors; (2) withdrawing shareholders, including matured shareholders; (3) dissenting shareholders or those who did not consent to or join in the merger; (4) the assenting shareholders or those who joined the merged company " (pp. 271, 272). " Execution of the judgment may be stayed until the proportionate value of the plaintiff's stock in the constituent association is thus determined."

Pertinent in the present case are the observations in *Oechsle* v. *Lodge Building & Loan Assn.* (119 Penn. Super. Ct. 597; 181 A. 375). There the plaintiff gave notice of withdrawal. Thereafter a merger took place to which he did not assent. He sued the consolidated association and was awarded " a decree for payment of the value of the shares as of the date of the first merger, $686.94 with interest from said date." In affirming this result, the court says (at p. 602): " Appellant contends that complainants cannot recover unless they allege and prove that defendant association had sufficient funds to pay, out of one half of its receipts, the claim of plaintiffs and prior withdrawals, or that the directors assented to the application of other funds for that purpose as required by Act of Assembly. This position loses sight of the fact that complainants are not and never were stockholders in defendant association."

Applying these principles to the present case, the court concludes that by his notice of October 30, 1929, the decedent achieved the status of a withdrawing stockholder. He would have been entitled, thirty days thereafter, to the award of a judgment for his entire contribution of $4,900, but execution thereon would have been stayed until a determination as to his *pro rata* rights in the assets of the association. Having achieved this position, he was a quasi creditor, whose rights were postponed only to actual outside creditors of the association, and this relationship was not capable of alteration by subsequent transactions in which he did not participate and to which he did not assent.

Upon the merger of the Greenebaum Association with the others in September, 1930, his claim against its assets in the hands of the other remained unimpaired. As demonstrated by the stipulation, his *pro rata* interest in the assets amounted to approximately sixty-six and two-thirds per cent of the face of his claim of $4,900, or about $3,266. This right of receipt was fixed retroactively as of

the effective date of his notice of withdrawal. Since it is in excess of the obligation on his note, it constitutes a valid defense to any action thereon in view of the failure to assert its staleness, if that was, in fact, a pertinent condition. It follows that the rejection of the claim on this ground by the executors was justified and the objections of the claimant, addressed to that action, will be overruled.

Enter decree on notice in conformity herewith.