■ EXECUTIVE SECURITIES CORPORATION, Appellant, v RICHARD GRAY, Respondent.—Order, Supreme Court, New York County, entered March 9, 1978, denying plaintiff's motion for summary judgment and granting summary judgment to defendant pursuant to CPLR 3212 (subd [b]), despite the absence of a cross motion for such relief, unanimously modified, on the law, to the extent of denying summary judgment to defendant and otherwise affirmed, without costs or disbursements on the appeal. The action brought by plaintiff trustee in liquidation, seeks to recover upon a promissory note in the sum of $62,000, issued by defendant to accommodate plaintiff's bankrupt, then known as Dopler & Co. (Dopler). Defendant had withdrawn from Dopler. He asserts he was "forced out". He received a general release from all liability on September 13, 1971. The note in issue here was allegedly a rollover note executed on or about February 22, 1973, backdated to October 1, 1972 to replace a prior note issued in January, 1972, backdated to September 30, 1971. That note was allegedly issued "dated back to September of 1971 to conform with their year end report. That was for their benefit, not for mine." The firm remained in business for some time, until February 14, 1975, when it was placed in liquidation under the Securities Investor Protection Act of 1970 (US Code, tit 15, § 78aaa *et seq.)* and its property turned over to the trustee, who thereupon commenced this action to recover on the promissory note. On March 5, 1973 Dopler had merged with Executive Securities Corporation with Executive the surviving corporate entity. Prior to its liquidation Executive functioned as a securities broker and dealer, maintaining approximately 8,200 securities accounts for over 2,500 investors. Defendant, to avoid liability on the note, claims that it was procured by fraud and duress and without legal or valuable consideration. He also relies upon an alleged collateral agreement with Dopler and a filed Uniform Commercial Code financial statement limiting recourse which purport to exonerate him from personal liability. Plaintiff contends that defendant should be estopped from relying upon fraud, duress or want or failure of consideration in the action to recover on the note for the benefit of Executive's creditors. Principal reliance is placed upon authorities in this State which have invoked public policy considerations to preclude the maker of a promissory note, issued for the accommodation of a banking institution, from claiming either that he received no consideration for the note, or that it was procured by fraud or duress. The maker of such an instrument in the form of a binding obligation has been held to be estopped on public policy grounds from enforcing an alleged oral collateral agreement not to enforce the note in accordance with its terms *(Mount Vernon Trust Co. v Bergoff,* 272 NY 192; *Bay Parkway Nat. Bank v Shalom,* 270 NY 172; *President & Directors of Manhattan Co. v Cocheo,* 256 App Div 560). Plaintiff asserts that similar policy considerations warrant that protection be afforded to stock brokerage firms. In view of the disposition which we here reach, we deem it unnecessary to decide, on this record, whether the principle, designed to afford necessary protection to a bank's depositors and creditors, need be automatically extended to the securities industry. The

cases relied upon do not so hold. *(Matter of Weis Securities,* 425 F Supp 212, affd — F2d —; *Redington v Exchange Nat. Bank of Chicago,* USDC ND Ill, 1977; *Redington v O'Hare Int. Bank,* USDC ND Ill, 1978.) The banks made loans and expressly agreed to subordinate their rights of setoff. They received consideration for their loans and subordination as part of a scheme to enable the dealer to satisfy the Securities and Exchange Commission net capital rule. Their claims of fraud and the right to rescission were held not to be tenable. Public policy was held to preclude any right to rescission. The banks had knowingly participated in the scheme and had benefited thereby. They were left to the legal remedies as subordinated lenders. No such considerations are here shown to exist, at least at the pleading stage. Nor need we, at this juncture, pass upon whether the cited authorities establish an unbending rule insofar as banking institutions are concerned, as plaintiff suggests. As stated in *Long Island Trust Co. v International Inst. for Packaging Educ.* (38 NY2d 493, 497), referring to *Mount Vernon Trust Co. v Bergoff (supra)* relied on by plaintiff: "Carried to its logical extreme, Special Term's reliance on *Mount Vernon Trust Co.* could be read as supporting a view that the public policy expressed therein would prevent the maker or guarantor of a note held by a bank from ever raising any defenses to that note. This, of course, is not what was intended in that case, and it would be completely contrary to law (Uniform Commercial Code, § 3-306.)" Sufficient appears here, from the circumstances of the execution and delivery of the original and rollover note and from the differences in their amounts to indicate fraud or duress may have been involved in their procurement. The sparse record is insufficient on which to ground a summary judgment. Neither side has submitted affidavits by persons with requisite knowledge of the facts as required. The submission of deposition transcripts, although relevant, does not excuse a party from compliance with applicable rules and statutes. CPLR 3212 (subd [b]) directs that such a motion "shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions. The affidavit shall be by a person having knowledge of the facts; it shall recite all the material facts; and it shall show there is no defense to the cause of action or that the cause of action or defense has no merit." Here, neither party conformed to the requisite standard. The affidavits and affirmation of respective counsel who are clearly without knowledge of the facts, submitted both in support of and in opposition to the motion are insufficient for that purpose. They are without probative value. *(Di Sabato v Soffes,* 9 AD2d 297; *Philip A. Feinberg, Inc. v Varig, S. A.,* 80 Misc 2d 305, affd 47 AD2d 1005.) Nor is the statutory standard met by reliance solely upon deposition transcripts, which in some cases may impose an intolerable burden upon Special Term where not accompanied by requisite affidavits. As applied here, neither party had adequately set forth with sufficient particularity the underlying facts to warrant summary disposition. Nor has either party adequately explained why defendant, after his withdrawal from the firm under a general release from liability, would or could be compelled to issue a note which defendant claims was to have no real effect at all. The assertion by counsel that the note was issued upon threat that defendant's misdeeds would be exposed is insufficient. Equally unpersuasive is plaintiff's acknowledgement for purposes of the motion that the facts are as alleged by defendant in order to test the legal issue. Nor on this record may we determine whether viable defenses exist with respect to defendant's assertions of fraud, duress and lack of consideration. Concur—Murphy, P. J., Birns, Fein, Sullivan and Lupiano, JJ.