■ HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellant, v COASTAL DRY DOCK AND REPAIR CORP., Respondent. — Order of the Supreme Court, New York County (Alvin Klein, J.), entered on September 29, 1982, which denied plaintiff's motion for summary judgment is unanimously reversed, on the law, with costs, and the motion is granted. The plaintiff Hartford Accident and Indemnity Co. on November 11, 1973 issued a workers' compensation policy to the defendant Coastal Dry Dock and Repair Corp. (Coastal), effective for three years. A further policy was issued on November 30, 1976, to run to January 15, 1977. Under the terms of the policy the claims of Coastal's employees would be handled directly by the plaintiff insurer (Hartford) and paid by the insurer. The basic standard premium for the policy based on the projected business risk of the type and size of the insured was charged to and paid by the defendant. However, the policy also contained a "Retrospective Premium Endorsement — 3 years Plan D" which established the basis for calculating additional premiums above the basic standard premium called for by the policy. Under this plan the premium for the insurance would be adjusted based upon the defendant's loss record (i.e., whether the risks encountered were either greater or less than originally projected). It appears that five retrospective premiums adjustments were made by Hartford, three of which disclosed an "additional" premium due and two of which showed a "return" premium due to the defendant. These adjustments were based upon the "loss" record of defendant on workers' compensation claims over the period covered by the retrospective analysis. When the defendant was entitled to a return of premium, as shown

by the analysis the amount due as a return was, with defendant's agreement, applied against any outstanding premiums then due. Defendant's broker had been advised to keep a set of "loss" books as a master copy against which the "loss record" of the defendant could be checked. Each time a retrospective analysis was done the defendant was notified of the result through its broker. Defendant never complained about the procedures employed by the plaintiff. Substantial net retrospective premiums, based on the defendant's loss record, accrued and remained unpaid. In 1978 Hartford brought suit to recover retrospective premiums that were due and remained unpaid. The complaint set forth two causes of actions, the first seeking an unspecified amount of retrospective premiums due, computed as of November 22, 1977, and the second cause of action claimed a retrospective premium due of $506,089. Defendant's initial answer asserted as complete defenses to plaintiff's first cause of action full payment, improper calculations of retrospective premiums by the plaintiff, and misrepresentation by the plaintiff of its qualifications to handle workers' compensation claims arising under Federal law. As partial defenses, the answer asserted breach of contract and improper handling of the claims by the plaintiff, settlement and failure of the plaintiff to follow customary claims practices in respect to workers' compensation claims, as well as utilization of improper procedures in respect to the settlement of claims. The answer further set forth the contention that the sums sought to be recovered were payment of plaintiff's "expenses" and not the "losses" of the defendant, that plaintiff entered into settlement agreements for claims against the defendant without the defendant's consent, and finally, that plaintiff failed to recognize changes in the Federal law respecting such claims and entered into agreements to settle claims in violation of the changed law. Four counterclaims were also set forth in the answer which essentially tracked the defenses referred to above, and sought damages in "unknown amounts". Plaintiff's reply to the counterclaims asserted simple denials. Thereafter the defendant apparently served an amended answer which added three additional counterclaims. The fifth counterclaim sought recovery of $3,506,000 allegedly paid to the State Insurance Fund by the defendant over a period of two years as premiums for "appropriate coverage" necessitated by plaintiff's misconduct. The sixth counterclaim alleged that defendant had to borrow $2,000,000 to pay the premiums to the State Insurance Fund, on which they had to pay interest. The seventh claims $2,000,000 of lost profits, resulting from a "loss of business" aggregating $20,000,000. The counterclaims sought a total recovery of $7.2 million. Hartford thereafter moved for summary judgment asserting that there were no valid defenses to its causes of action and that the counterclaims were spurious and factually unsupportable. It was established that by the terms of this policy, the company was authorized to make such investigations, negotiations and settlements of claims or suits as it deemed expedient. Gerald Carter, manager of Hartford's commercial accounts pricing and evaluation department, submitted an affidavit showing the calculations of the retrospective premiums and asserting that defendant was estopped from objecting to the premium calculations because some 625 claims have been paid during the period for which the calculations were made, all without objection by the defendant. The Carter affidavit also asserted that the defendant had been given an opportunity to review all the claims in excess of $10,000 during a 60-day period prior to the retroactive adjustment processing and for 10 days thereafter, but failed to attend a meeting requested by it for which a date was set. In a further supporting affidavit by its premium account manager, plaintiff related its efforts to collect the $439,437 in retrospective premiums from the defendant and the fact that no objection was ever raised to the plaintiff's calculations, although ample opportunity to do so was afforded. The

only opposition submitted by the defendant to this motion was an affidavit by its attorney. He contended that he had attended a meeting with the plaintiff in December, 1977, at which time he reviewed some 30 files, the only ones then available, prepared an evaluation and offered suggestions. All other outstanding files were to have been made available to him and defendant's broker, but never were. He asserted that defendant was ready to prove that the plaintiff was unfamiliar with the Federal statute involved, the Longshoreman and Harbor Workers' Compensation Act, and purported to demonstrate the mishandling of claims by the plaintiff through two examples. Without any indication as to what they were, Special Term found that "issue of fact" existed and denied the motion for summary judgment. We disagree. It is fundamental that a party opposing a motion for summary judgment must assemble and lay bare its proof to demonstrate the existence of a genuinely material issue of fact (*Aetna Cas. & Sur. Co. v Schulman,* 70 AD2d 792, 794). The only opposition submitted was that of the attorney, who had no personal knowledge. Such an affidavit is patently insufficient. (CPLR 3212, subd [b]; *Executive Securities Corp. v Gray,* 67 AD2d 860, 861.) Moreover, not only is that affidavit totally devoid of any evidentiary facts, no reasonable excuse for such failure is set forth (cf. *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065). It is clear that the so-called affirmative defenses and counterclaims are legally insufficient. Not only does the policy by its terms give to the insurer the right to negotiate and settle claims as it deems appropriate, there is not even any indication let alone factual demonstration that defendant raised any objection to the settlement of any claims or to the calculation of the retrospective premium. (*Matter of City of New York* [*Synor Garage Corp.*], 74 AD2d 552; 5 Couch, Insurance 2d, § 30:46.) "If the insurer notified the insured of an increase in rate, and the latter acquiesces therein and receives the benefit of the insurance, he is liable for the increased amount. The insured is bound by the terms of a compensation policy which he accepted and under which he filed claims for workermen's [*sic*] compensation in favor of employees during the year when he had the policy in his possession and raised no objection to its terms and provisions until after demand was made for the balance due on premium." (5 Couch, Insurance 2d, p 560.) Concur — Sandler, J. P., Silverman, Bloom, Fein and Alexander, JJ.