*301 OPINION OF THE COURT
Carol R. Edmead, J.
In this action to recover premiums due under an insurance policy, plaintiff moves for an order (1) striking defendant’s answer and affirmative defenses and granting plaintiff summary judgment against the defendant for $466,100, plus costs pursuant to State Finance Law § 18 (5), or (2) prohibiting defendant from conducting discovery or introducing at trial that plaintiff improperly handled the defense of the workers’ compensation claims filed by defendant’s employees, and (3) for costs and disbursements.
In response, defendant cross-moves for summary judgment to dismiss the complaint on grounds that plaintiffs claims (1) are barred due to the absence of a contract with a valid and binding retrospective premium endorsement; (2) are barred due to plaintiffs breach of the terms of the proffered agreement and endorsements; (3) are untimely under CPLR 213 (2); and (4) to the extent plaintiffs claims are predicated upon an unexecuted and/or postdated retrospective premium agreement and endorsement, such claims are barred by General Obligations Law § 5-701 (a) and CPLR 213 (2).[1]
In support of plaintiffs motion, plaintiff submits, among other things, the following: defendant’s application for workers’ compensation insurance, the workers’ compensation insurance policy that was issued to defendant (the policy), an “Information Page New Policy” form dated “11/98” pertaining to said policy (the 11/98 endorsement), an audit dated October 31, 1993, an “earned Premium Bill” dated January 20, 1994, the first, second, third, fourth and fifth “Not Final” accounting statements, dated November 1994, June 1995, July 1996, June 1997, and April 2000, respectively, the sixth “Final” accounting statement, dated March 2001, six earned premium bills dated December 1994, August 1995, July 1996, February 1998, April 2000 and April 2001, and the statement of account showing the balance due. Plaintiff also submits an affidavit of director of underwriting Vincent Troianiello (the Vincent affidavit), and an *302 affirmation of director of actuarial services Reuben Epstein (the Epstein affirmation).[2]
According to the Vincent affidavit, plaintiff issued the policy to defendant for the period October 1, 1992 to October 1, 1993. As part of each “Information Page” is the special endorsement for the “One Year L.B. (Low Basic) Retrospective Rating Plan,” which plaintiff issued to defendant (the endorsement). The endorsement, combined with the policy, sets forth the terms and conditions of the policy and the manner in which plaintiff computed the premiums.
The Vincent affidavit continues, by explaining, among other things, the method of calculation of premium charges under the retrospective plan selected by defendant. A retrospective premium plan permits an insurer to recover additional premiums after the end of a policy period based on the insured’s actual claims experience for claims arising during the policy period. In pertinent part, the indicated retrospective premium is the sum of the basic premium and incurred losses, within the range of the maximum and minimum retrospective premium. The affidavit continues:
“For the first year of each policy period, the defendant’s Indicated Retrospective Premium is calculated, and if monies were then due a bill sent, and if a credit results, a refund issued. In any subsequent year, the Indicated Retrospective Premium is calculated by determining if the Incurred Losses have increased or decreased as compared to the prior year’s accounting of Incurred Losses. If the Incurred Losses have increased over and above those incurred in the prior accounting for that same year, an additional premium is due to [plaintiff] ... In each subsequent or retrospective accounting, the increases and/or decreases in the Incurred Losses for each claim are totaled, offset against each other, and then the net result of the Incurred Losses is then compared to the Incurred Losses for the prior Retrospective Accounting for that same period.”
According to the Vincent affidavit, this either increased or decreased the retrospective premium yearly. “The sums claimed to be due in this action to SIF [plaintiff] are because the *303 Indicated Retrospective Premium, the sum of the Basic Premium and the Incurred Losses, exceeded the sums paid by defendant to SIF [plaintiff].” According to the Vincent affidavit, after applying credits and debits to the payments made, defendant is indebted to plaintiff for $466,100.
Plaintiff argues that the submissions establish its entitlement to summary judgment. Furthermore, defendant cannot claim that plaintiff mishandled workers’ compensation claims or that it breached its covenant of good faith and dealing, since plaintiff has the right to negotiate and settle claims as it deems appropriate. Further, as the legislative intent is to allow a state agency to collect up to an additional 22% to cover collection costs without establishing whether such amount is reasonable, and plaintiffs costs of collection are 14% $65,254 should be awarded to plaintiff.
Plaintiff further argues that defendant’s affirmative defenses should be stricken, given that defendant’s affirmative defenses (a) of failure to state a cause of action lacks merit; (b) that the action is barred by documentary evidence lacks merit as no such documentary evidence exists; (c) that the action is barred by plaintiffs negligence lacks merit; (d) that the action is barred by the doctrine of unclean hands (fourth), estoppel (fifth), and waiver (sixth) are insufficiently pleaded; (e) that the action is barred by laches lacks merit since laches cannot be asserted as a defense to an action at law; (f) that the action is untimely lacks merit as this action to recover monies due, akin to a claim for installment payments due under a note, was commenced within the six-year statute of limitations; and (g) that the action is barred by the terms of the policy lacks merit as no such terms exist. Defendant’s tenth affirmative defense seeking to preserve the right to assert additional affirmative defenses lacks merits, since no such defenses have been asserted.
Defendant opposes plaintiffs summary judgment motion and cross-moves for summary relief pursuant to CPLR 3212 (b). Defendant contends that plaintiff failed to establish the existence of the very contract and endorsement forming the basis of the demanded relief. Defendant contends that plaintiff’s claim is supported by the “11/98 endorsement,” which according to the deposition of Mr. Chali,[3] was a form “probably” issued in 1998. Therefore, since plaintiffs claim, based on a postdated endorsement, could not have been part of the policy issued for 1992- *304 1993, plaintiff failed to establish the terms of the agreement. Defendant also argues that assuming plaintiff has established a valid and binding agreement, plaintiff failed to establish the undisputed terms of such agreement. The “One Year L.B. (Low Basic) Retrospective Policy Plan,” submitted by plaintiff, contains a “loss limit” provision, which states that “Incurred losses [are] subject to a limit for the combined amount of indemnity and medical losses on any one accident regardless of the number of injuries or claims resulting from such accident, such limit to be by mutual agreement between the assured and the [plaintiff] made prior to the start of the period covered by this endorsement.” According to defendant, this provision, coupled with the deposition testimony of Mr. Chali, who could not determine whether the policy did not have a loss limit, indicates that the policy had a loss limit, which would reduce defendant’s liability by over $275,000. Since plaintiff contends that this loss limit does not apply, issues of fact exist as to the basic contract terms.
Defendant also argues that plaintiffs claims are barred due to its material breach of the terms of the policy and endorsements and failure to produce annual accounting statements as required.[4] Defendant relies on the following provision of the retrospective rating plan, which states that “[approximately twelve months after the initial computation and at subsequent twelve month intervals, [plaintiff] shall recompute the retrospective premium, on the basis of [the plaintiffs] determination of the amount of the incurred losses . . . .” Defendant also submits the affidavit of defendant’s manager of risk management, Jennifer Minerva, wherein she states essentially that plaintiff mishandled the workers’ compensation claims of three claimants (Gennaro Lárice, Maria Labrada and Valerie Diaz), and failed to report to defendant the status of such claims. Defendant also submits the affidavit of workers’ compensation specialist, Maureen Seward, wherein she states that based on her review of plaintiffs files, plaintiff mishandled the aforementioned claims, in addition to a fraudulent claim regarding a *305 Traore Sekou.[5] Ms. Seward also stated that, in her experience, in the policy period during 1992-1993, policies with a retrospective program “often had a $100,000.00 loss limit.” Defendant also submits an affidavit of Mr. Sekou, to establish that the plaintiffs payment on the Traore Sekou claim was fraudulently obtained.
Defendant maintains that plaintiff failed to inform defendant of the status of such claims, failed to file appropriate forms[6] and file an appeal related to one of such claims, and failed to provide timely accountings, as conceded in Mr. Epstein’s deposition. As such failures allegedly prevented defendant from protecting its own rights and mitigating its losses, defendant contends that it is entitled to a setoff for the four mishandled claims.
Defendant further argues that plaintiffs claims are untimely under CPLR 213 (2) and, to the extent plaintiffs claims are based on an unexecuted and/or postdated retrospective premium agreement and endorsement, are barred by General Obligations Law § 5-701 (a) (statute of frauds) and CPLR 213 (2). Defendant contends that since plaintiffs action was filed more than six years after the purported policy expired, any attempt to reform such policy should be rejected as untimely. Additionally, any reformation is barred by the statute of frauds, since performance under the purported policy could not be performed within one year.
Defendant also argues that in the event the court denies plaintiff summary judgment, discovery should continue as to (1) the existence of a valid contract and its terms, (2) the parties’ performance with the terms of such contract, and (3) the amount of claimed premiums attributable to plaintiffs failures versus the amount attributable to properly administered claims. Defendant claims that discovery is yet incomplete, since the witnesses produced by plaintiff lacked firsthand knowledge of *306 defendant’s workers’ compensation contract. At his deposition, Mr. Chali identified several people working at plaintiff, or retired and living in the New York metropolitan area, who have firsthand knowledge of defendant’s contract.[7]
In reply, plaintiff submits another “Information Page New Policy” (the 11/90 endorsement), which according to a further affidavit from Mr. Troianiello (the 2nd Vincent affidavit) was retrieved from plaintiffs microfiche records. According to the 2nd Vincent affidavit, the 11/90 endorsement was sent to defendant in November 1992. The 2nd Vincent affidavit further indicates that the accounting statements show that plaintiff did not charge an excess loss premium, and refers to plaintiff’s internal memorandum which provides that the policy would not have a loss limit. Plaintiff argues that Ms. Seward’s affidavit indicating that workers’ compensation policies often had an excess loss limit fails to establish that the subject policy had such a loss limit, and that its submissions conclusively establish the terms of the policy.
Plaintiff also submits an affidavit from Robert Sammons, director of claims, wherein he states that there is no requirement in the policy that plaintiff communicate with defendant. Mr. Sammons further states that the deadlines for filing the Lárice and Labrada claims with the Special Disability Fund expired, and the records demonstrate that plaintiff timely computed and issued the first, second and third retrospective premium adjustment statements in December 1994, August 1995, and July 1996, respectively. The Special Disability Fund filing deadline ended on the Lárice claim on July 19, 1995 and the deadline for filing the Labrada claim ended on November 24, 1994, before the issuance of the second statement.
*307 Plaintiff also submits a further affidavit of Mr. Epstein, wherein he points out that Ms. Minerva was not employed by defendant at the time coverage was issued and lacked personal knowledge of the facts underlying plaintiffs claims. Mr. Epstein also states that the policy does not require plaintiff to advise defendant of the status of the workers’ compensation claims. Mr. Epstein also states that although the policy only requires plaintiff to compute the retrospective premium adjustments every 12 months, and could so until “all the cases are closed by award or paid in full . . . ,” there is no obligation to issue annual computations of the changes in the incurred losses.
Mr. Epstein further states that defendant should have known upon receipt of the third retrospective premium adjustment statement that the four claims forming the basis of its opposition had not been finalized, and thus the incurred losses on such claims could increase or decrease until all the claims are closed by award or paid in full. Further, defendant’s request that the comments on the third retrospective premium adjustment statement be reviewed for accounting purpose reductions or the closure of each file indicated that defendant knew that the claims were not finalized or filed. Also, the fourth retrospective premium adjustment statement sent to defendant in February 1998 was based on a review of defendant’s claims as of June 23, 1997 and was computed approximately one year after the incurred losses in the third retrospective premium adjustment statement were calculated. Although defendant hired a representative in June 1999 to review the claims made under the policy, defendant made no claim following its representative reviews of the changes in the incurred losses. Defendant did not object to the incurred losses, the additional monies due, as set forth in the fourth premium adjustment statement, never complained about the timing of the calculation of the additional premiums claimed to be due in such statement, the manner in which plaintiff handled the claims, or the increase in the incurred losses for the Lárice claim, or to plaintiffs claim of additional premiums due.
Furthermore, with respect to the fifth retrospective premium adjustment statement, Mr. Epstein states that defendant does not claim to have complained about the time of the issuance or the timing of its calculation, or the manner in which plaintiff handled the claims which had yet to be finalized, or to plaintiff s claims that plaintiff was owed additional monies for additional incurred losses since the prior accounting. Also, defendant does *308 not claim to have complained about the manner in which plaintiff handled the claims, never objected to plaintiffs claim that it was owed additional premiums for additional incurred losses since the prior accounting. In any event, plaintiff’s alleged failure in timely computing the incurred losses in the fifth and sixth retrospective premium adjustment annual is irrelevant to the determination of monies due under the policy. Also, it was not until the sixth and final retrospective premium adjustment statement that plaintiff determined that all claims had been “closed or paid in full,” and until plaintiff made such determination, plaintiff had a right to continue computing and issuing annual retrospective premium adjustment statements to include the increases in the incurred losses on the claims of defendant’s employees.
Further, defendant’s argument that plaintiffs delay in issuing the third, fourth, fifth, and sixth retrospective premium adjustment statements caused defendant to miss important appeal and filing deadlines is without merit, since such deadlines had passed by the time that the second retrospective premium adjustment statement was sent to defendant. Further, defendant fails to explain how the alleged untimely issuance of statements prevented the timely filing of an appeal of an adverse decision when the time to file an appeal of an adverse determination of the Workers’ Compensation Board is 30 days. Epstein also points out that Ms. Minerva does not detail what steps, if any, the defendant took to “mitigate its damages” following receipt of the fourth, fifth and sixth retrospective premium adjustments. Further, the affidavits of defendant do not dispute that plaintiff submitted a loss run with each premium adjustment statement, which listed the open claims, and the amounts paid and incurred for each such claim. Finally, defendant is not entitled to an offset because the Supreme Court lacks subject matter jurisdiction over such “recoupment” claims.
In response, defendant contends that the belated submission of the 11/90 endorsement was never disclosed despite defendant’s discovery demands. Also, since such endorsement contradicts the deposition testimony of Mr. Chali, who was unable to explain the absence of a contract or its basic terms, it raises an issue of fact. Further, in light of the testimony of Mr. Chali who stated that the policy contained a limit, defendant opposes the submission of the letter and affidavit stating otherwise, arguing that such submissions violate the parol evi *309 dence rule against using documents exchanged between the parties while negotiating a contract to establish the terms of the contract unless the court concludes the terms of the contract are ambiguous. In any event, such letter and affidavit raise issues of fact. Further, in the absence of any communication from plaintiff, defendant was in no position to know at any time before it received the “fourth annual statement” that it needed to object to plaintiffs lack of performance of its duty to defend under the policy, particularly to the Labrada and Lárice claims. Further, defendant claims that Epstein’s recent statement that plaintiff had no duty to issue statements annually is inconsistent with his deposition testimony that plaintiff failed to follow its own procedure by not providing yearly statements.
Defendant further argues that in the event this court denies summary judgment, discovery should follow concerning plaintiffs lack of performance, the proper measure of damages, and the validity of the belatedly-produced purported contract. Statute of Limitations
Prior to addressing the merits of plaintiffs substantive claims, as a preliminary matter, this court addresses the statute of limitations defense to plaintiffs action. Generally, any statute of limitations begins to run when a cause of action accrues, and a cause of action accrues when an injury is sustained (CPLR 203 [a]; Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex., 87 NY2d 36 [1995] [an action accrues when all the facts necessary to sustain the cause of action have occurred]). In New York, a breach of contract cause of action accrues at the time of the breach (Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399 [1993], citing Edlux Constr. Corp. v State of New York, 252 App Div 373, 374 [3d Dept 1937], affd 277 NY 635 [1938]; see also, Kassner & Co. v City of New York, 46 NY2d 544, 550 [1979]).
Pursuant to part four, section E, of the policy, defendant was required to “pay all premium when due.” However, section F of part four provides that the “premium shown on the Information Page, schedules, and endorsements is an estimate . . . [and that the] final premium will be determined at the end of each policy period by using the actual, not estimated, premium basis ... If the final premium is more than the premium you paid to us, you must pay us the balance . . . .” (Emphasis added.) Therefore, although the policy contemplates that premiums will continue to accrue, through adjustments, until all claims for the insured periods are closed, the amounts defendant owed in *310 premiums or the amount to be returned to defendant was determined annually and was expected to be settled annually after calculations were completed (see e.g. American Ins. Co. v Midwest Motor Express, Inc., 554 NW2d 182 [Sup Ct, ND 1996]). Thus, the statute of limitations accrued as each premium became due and payable (see e.g. Brookshire Grocery Co. v Bomer, 959 SW2d 673 [Tex Ct App 1997] [where annual adjustments were estimates of premiums due under the policy, court held that it was not until the receiver for insurer adjusted the premiums pursuant to the original retro plan and demanded a deficiency payment from employer that the cause of action accrued]).
In this regard, plaintiffs contention that the policy in question is akin to an installment obligation is persuasive, in that the statute of limitations for installment obligations begins to run on the date each installment becomes due (see Phoenix Acquisition Corp. v Campcore, Inc., 81 NY2d 138, 143 [1993] [installment obligations “warrant different considerations and results under the Statute of Limitations’ microscope”]; Loiacono v Goldberg, 240 AD2d 476 [2d Dept 1997]). That this action is akin to installments due on a note is also supported by Workers’ Compensation Law § 92 (“workers’ compensation insurance premiums for any policy period based on an estimated expenditure of wages for the period may, at the policyholders’ option, be paid into the state insurance fund by installments in accordance with rules promulgated by the commissioners”).
Thus, contrary to defendant’s contention, the statute of limitations did not accrue upon the expiration of the policy period. Defendant cites no case law, and the court fails to locate any case law in support of defendant’s contention that the six-year statute of limitations accrued at the expiration of the policy under these circumstances. Furthermore, to hold otherwise would contradict the “nature of a retrospective premium endorsement under which the amount owed is generally not determined until some time after the policy expires” (American Ins. Co. v Midwest Motor Express, Inc., 554 NW2d 182, 187 [1996], supra). Since plaintiffs action is based on the amounts claimed to be due as set forth in the retrospective accounting billed beginning in February 1998, plaintiffs action is timely. Moreover, to the extent defendant’s argument that the action is untimely is based on the alleged untimeliness of plaintiffs attempt at reformation of the policy, such argument is rendered moot in light of the 11/90 endorsement.
*311 Accordingly, the branch of plaintiff’s motion to dismiss defendant’s affirmative defense alleging a statute of limitations violation is granted, and defendant’s cross motion to dismiss for same is denied.
Plaintiffs Motion for Summary Judgment
To obtain summary judgment, the movant must establish its cause of action or defense sufficiently to warrant the court as a matter of law in directing judgment in its favor (CPLR 3212 [b]). Where the proponent of the motion makes a prima facie showing of entitlement to summary judgment, the burden shifts to the party opposing the motion to demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action, or to tender an acceptable excuse for his or her failure to do so (Vermette v Kenworth Truck Co., 68 NY2d 714, 717 [1986]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). As relevant to the instant proceeding, a party seeking to enforce a contract bears the burden of establishing the existence, terms, and validity of the contract (Paz v Singer Co., 151 AD2d 234, 235 [1st Dept 1989]; Dayton Towers Corp. v DeMatteis & Sons, 212 AD2d 396 [1st Dept 1995]).
Plaintiffs submissions, including the affidavits from persons with knowledge and business records, explained the terms of the policy and its endorsements, how the amounts due under the policy were calculated, and the formula and information used to arrive at the amounts. Defendant’s objection to plaintiff’s initial submission on the ground that the 11/98 endorsement was insufficient to establish the terms of the policy is sufficiently met by plaintiffs later submission of the 11/90 endorsement. That the 11/90 endorsement was indeed sent to defendant in November 1992 is undisputed by defendant, and defendant’s claim that such endorsement was never disclosed despite defendant’s discovery demands is of no moment. Thus, the documents established the existence, terms, and validity of the policy upon which plaintiffs complaint is based, and defendant did not raise a triable issue of fact as to the methods employed by plaintiff in calculating the amounts of premiums (Commissioners of State Ins. Fund v Gem Steel Erectors, 237 AD2d 213 [1st Dept 1997]).
Defendant’s claim that the 11/90 endorsement creates an issue of fact since its existence contradicts the deposition testimony of Mr. Chali, who was unable to explain the absence of a contract or its basic terms, is wholly without merit. It cannot be said that Mr. Chali testified that such endorsement was *312 nonexistent, and there is no basis for this court to conclude that such document was fabricated to support plaintiffs claim. Nor is there any issue of material fact as to the “loss limit” of the policy. The unequivocal deposition testimony of Mr. Chali on this issue, and the affidavit of Ms. Seward, who states that policies in the 1992-1993 period “often had” a loss limit fail to raise an issue of fact that there was a loss limit in the subject policy (emphasis added). Thus, having established the existence and terms of the policy, plaintiff has established its prima facie entitlement to summary judgment.
Defendant’s allegation that plaintiff breached the terms of the policy and submissions submitted in support, essentially constitute allegations that plaintiff mishandled the workers’ compensation claims. Defendant’s allegations, however, are insufficient to raise an issue of fact as to defendant’s liability under the policy and the endorsement. Defendant’s claim that plaintiff breached “its implied covenant of good faith and fair dealing and that plaintiff insurer, in order to recover workers’ compensation premiums under a policy with a retrospective component, has the affirmative burden of proving that it acted reasonably and in good faith in adjusting claims” has been consistently rejected as legally insufficient (Commissioners of State Ins. Fund v J.D.G.S. Corp., 253 AD2d 368 [1st Dept 1998] [defendant’s claim concerning propriety and reasonableness of reserves imposes by plaintiff in its retrospective accounting as well as its mismanagement of the claims files, have been consistently rejected]; Insurance Co. of Greater N.Y. v Glen Haven Residential Health Care Facility, 253 AD2d 378 [1st Dept 1998] [defendant’s allegation that insurer failed to reasonably investigate claim resulting in increased retrospective premium rejected as a defense to claim for premiums due]; Hartford Acc. & Indem. Co. v Coastal Dry Dock & Repair Corp., 97 AD2d 724 [1st Dept 1983], affd 62 NY2d 924 [1984]; see also, Commissioners of State Ins. Fund v Gem Steel Erectors, 237 AD2d 213 [1st Dept 1997], lv dismissed 91 NY2d 866 [1997]). Further, there is no indication in the record that defendant raised any objection to the settlement of the claims or to the calculation of the premium until after the demand was made for the balance due on the premium (see Hartford Acc. & Indem. Co. v Coastal Dry Dock & Repair Corp., 97 AD2d 724 [1st Dept 1983]).
Defendant also failed to cite any provision in the policy requiring plaintiff to advise defendant of the status of the claim. Additionally, the policy here does not obligate the defendant to re *313 imhurse plaintiff for the sum of the settlements plaintiff paid from any deductible amount. Thus, St. Paul Fire & Mar. Ins. Co. v Edge Mem. Hosp. (584 So 2d 1316 [Ala 1991]), relied upon by defendant for the proposition that plaintiff breached its duty to keep defendant informed of the settlement, is not persuasive.
Nor do defendant’s affirmative defenses require a trial on the issue of liability. At the outset, the court notes that bare legal conclusions are insufficient to raise an affirmative defense (CPLR 3013, 3018 [b]; Robbins v Growney, 229 AD2d 356 [1st Dept 1996]). In any event, defendant’s affirmative defense that the complaint fails to state a cause of action and that the action is barred by documentary evidence lacks merit in light of plaintiffs demonstration of entitlement to summary judgment. Defendant’s affirmative defense that the action is barred by plaintiffs negligence is not a recognized defense to this action, as discussed above. Also, defendant’s bald and conclusory allegation that the action is barred by the doctrine of unclean hands, estoppel, and waiver is insufficiently pleaded (Robbins v Growney, 229 AD2d 356 [1st Dept 1996], citing Bentivegna v Meenan Oil Co., 126 AD2d 506, 508 [2d Dept 1987] [affirmative defenses interposed by defendant simply allege that the plaintiff’s claim is “contrary to documentary evidence” and barred by “waiver and estoppel” were “totally bereft of factual data (and) are fatally deficient”]). Defendant’s allegation that the action is barred by laches lacks merit since laches cannot be asserted as a defense to an action at law (County of Rockland v Homicki, 227 AD2d 477 [2d Dept 1996]). Defendant’s affirmative defense that the action is barred by the terms of the policy lacks merit as no such terms exist. Defendant’s tenth affirmative defense seeking to preserve the right to assert additional affirmative defenses lacks merit, since no such defenses have been asserted.
Plaintiff has established the absence of any triable issue of fact as to defendant’s liability for the amount due and owing. Further, as it is undisputed that the bill for the amount sought was transmitted to defendant, there is no basis in the record to deny plaintiffs costs of collection of 14% or $65,254,[8] which is supported by the plaintiffs counsel’s affirmation (cf. Commissioners of State Ins. Fund v Brooklyn Barber Beauty Equip. Co., 191 Misc 2d 1 [Civ Ct, NY County 2001] [lack of proof that bill was transmitted and received by defendant precluded recovery *314 of collection costs pursuant to State Finance Law § 18 (5)]). Thus, plaintiff is entitled to summary judgment for the entire amount sought.
In light of the foregoing, the branch of plaintiffs motion for an order prohibiting defendant from conducting discovery or introducing at trial that plaintiff improperly handled the defense of the workers’ compensation claims filed by defendant’s employees is moot.
Defendant’s Cross Motion for Summary Judgment
In light of this court’s grant of summary judgment in plaintiffs favor, and dismissal of defendant’s affirmative defenses, defendant’s cross motion for summary judgment dismissing the complaint, on grounds that plaintiffs claims (1) are barred due to the absence of a contract with a valid and binding retrospective premium endorsement, (2) are barred due to plaintiffs breach of the terms of the proffered agreement and endorsements, (3) are untimely, and (4) violate General Obligations Law § 5-701 (a), is moot. Furthermore, defendant’s request for a setoff to plaintiff’s claim is cognizable only in the Court of Claims (see Commissioners of State Ins. Fund v Netti Wholesale Beverage Co., 245 AD2d 48 [1st Dept 1997] [counterclaim in Supreme Court for premiums overpaid, even when presented as a setoff to plaintiffs claim is cognizable in the Court of Claims]).
Accordingly, plaintiff’s motion for an order (1) striking defendant’s answer and affirmative defenses, and (2) granting plaintiff summary judgment against the defendant for $466,100, plus costs pursuant to State Finance Law § 18 (5), is granted; plaintiff’s motion for an order prohibiting defendant from conducting discovery or introducing at trial that plaintiff improperly handled the defense of the workers’ compensation claims filed by defendant’s employees is denied as moot; and defendant’s cross motion for summary judgment to dismiss the complaint is denied in its entirety.

. Plaintiff’s motion bears sequence number 001. Defendant’s motion bears sequence number 002. The two motions are consolidated for disposition and same are decided as indicated herein.

. The Epstein affidavit verifies that the accountings are true and accurate. Mr. Epstein also explains, among other things, the definitions found in the 11/98 endorsement and the manner in which defendant’s premiums were calculated.

. Barry Chali is an associate underwriter for plaintiff.

. In this regard, defendant contends that by the third accounting, dated July 16, 1996, the period when most retrospective premium plans close, plaintiffs records show that defendant had a premium credit of over $35,000. It was not until 19 months later that plaintiff contended that defendant “might owe the money” for the policy period. Plaintiff provided no updated losses to defendant, and after approximately 2½ years later, issued a fifth accounting statement requiring additional premiums for some of the workers’ compensation claims here at issue.

. Defendant claims that plaintiff failed to withhold a lump-sum payment in this fraudulent claim after having been informed of the fraud.

. According to defendant, the workers’ compensation statute provides that an employer’s liability for a workers’ compensation claim is limited to 104 weeks in the event the employee has a preexisting injury that exacerbates the harm the employee suffers in a workplace injury. Plaintiff’s files indicate that plaintiff should have known of these claimants’ preexisting injuries. Thus, because plaintiff failed to file Labrada’s and Lárice’s claims to the Special Disability Fund for reimbursement for benefits paid after the first 104 weeks of disability, and plaintiff failed to notify defendant of such preexisting injuries, defendant could not protect its rights, and are thus entitled to offset all damages exceeding the initial 105 weeks.

. In particular, defendant seeks to depose (1) Vincent Troianiello, (2) Bart Simon, who, according to Mr. Chali, made the original offer and acceptance of the policy and would know whether plaintiff altered any computation policy or procedure during the period between the policy expiration date and the postdated forms, (3) a retired Herbert Jacobs, who, according to Mr. Chali, made and approved the offer of the policy to the insurance broker and approved and delivered the policy to defendant, (4) Steve Waldman, who according to Epstein’s deposition, handled communications with defendant regarding premium payments, and was involved in the fifth and sixth retrospective premium accountings, and according to its reply, and (5) Robert Sammons, who provided an affidavit in support of plaintiffs summary judgment motion and in opposition to defendant’s cross motion for summary judgment concerning the issuance of the accounting and claims handling procedures used in the disputed claims.

. Plaintiffs request for costs in collection pursuant to State Finance Law § 18 (5) is unopposed.